## CHARLES F. DIGGS ET AL. *vs.* HARRY L. DENNY, TRUSTEE, ET AL.

*Fraud in Sales—Purchase by Insolvent—Reasonable Expectation of Ability to Pay—Replevin—Special Finding of Facts.*

Where goods are purchased on credit by a man who does not know that he is insolvent and who expects to pay for the same, the transaction is not fraudulent although a disinterested person, acquainted with the facts, would not think that the buyer could have founded a reasonable expectation of paying the purchase money from the resources within his reach at the time the purchase was made.

If at the time of making a contract of sale the buyer is insolvent and knows himself to be so, and has no reasonable expectation of being able to pay the purchase money, he is guilty of fraud, and the seller may disaffirm the contract and take the goods so obtained by replevin from the buyer's assignee for the benefit of creditors.

But a purchase by an insolvent is not fraudulent merely because such buyer had good reason to know that he was insolvent, provided that at the time of the sale he intended to pay.

A special finding of facts is part of the verdict, and if such finding shows that the plaintiff is entitled to recover while the general verdict is for the defendant, the question arising from such conflict is properly presented by a motion for a judgment *non abstante veredicto.*

Appeal from a judgment of the Superior Court of Baltimore City (DOBLER, J.) At the trial the following prayers were offered:

*Plaintiffs' 1st Prayer.*—The plaintiffs pray the Court if it shall find as a matter of fact that at the time of the purchase of the coal for which the replevin in this case was issued, the purchasers thereof, August and Julius Hellweg, knew themselves to be insolvent or had good reasons to know themselves to be insolvent and had no reasonable expectation of paying for the same, and that the defendant in the replevin claims title thereto under the deed of assignment from said Hellweg to him, offered in evidence, and that the plaintiffs held in their possession the notes of the said Hell-

wegs given to them in part settlement for the coal, and tendered the same to the defendant at the trial table, then to rule that the plaintiffs are entitled to recover.   (Rejected).

*Plaintiffs' 2nd Prayer.*—If the Court shall find as matters of fact that the plaintiffs are partners under the name of Charles F. Diggs & Company, and sold the coal mentioned in the evidence to the copartnership, trading under the name of August Hellweg, upon the terms stated in the evidence and received the promissory notes offered in evidence on account thereof, and that at the time of said sales and delivery of said notes said purchasers were insolvent and knew themselves to be so, and had no reasonable expectation of paying for said coal in accordance with their contracts of purchase, and that the plaintiffs held in their possession the said notes and produced and tendered the return thereof to the defendant at the trial table, and that the defendant claims title to said coal under the assignment from the purchaser to him offered in evidence, then the plaintiffs are entitled to recover.   (Granted).

*Plaintiffs' 3rd Prayer.*—If the Court shall find as a matter of fact that the plaintiffs are copartners and sold to Julius and August Hellweg, in the month of August, 1896, the coal then proven to have been sold, and that the same was delivered, 486.10 tons in all, to the purchasers, on the 1st, 4th, 6th, 11th and 13th days of August, 1896, and that the said purchasers executed the deed of assignment offered in evidence to the defendant, on the 15th day of August, 1896, and that at the time the said sales were made the purchasers were insolvent and knew themselves to be insolvent and had no reasonable expectation of being able to pay for the same according to their contracts, and that they commingled said coal with other coal previously purchased by them from the plaintiffs and others, and that the coal taken under the replevin is of the same kinds as that sold on said days in the month of August, 1896, and less in quantity, then the plaintiffs are entitled to recover.   (Granted).

And the defendant offered the following four prayers :

*Defendant's Prayer No. 1.*—If the Court as a jury shall find from the evidence that the plaintiffs had been selling coal to the firm of August Hellweg during a series of years on credit, and in the course of business between them monthly statements were usually rendered and payments made in cash and notes from time to time as given in evidence ; and shall further find that the plaintiffs sold and delivered the coal in this controversy to the said firm of August Hellweg in their usual course of trade and on credit, and that said firm of August Hellweg made their purchase of said coal from the plaintiffs in good faith and with an honest and reasonable expectation and intention at the time·of such purchases to pay for the same, then such purchases so made were valid in law, and the verdict must be for the defendant, even although the Court as a jury shall believe that the said firm of August Hellweg was insolvent at the time of such purchase. (Rejected).

*Defendant's Prayer No. 2.*—If the Court sitting as a jury believe from the evidence that the sales and deliveries of the coal purchased from the plaintiffs as given in evidence were made to the firm of August Hellweg on credit, and that said firm at the time of such sales and deliveries were insolvent and knew themselves to be so, yet they were under no obligation to disclose such facts to the plaintiffs, and such failure to disclose on their part did not constitute the purchases fraudulent.

And if said firm of August Hellweg, at the time of purchasing the coal in controversy, had a reasonable expectation based upon cash on hand, assets under their control and monies to be derived from the coal so purchased from the plaintiffs by sales thereof and from the sales of coal purchased from others and from all the resources within their reach of being able to meet their engagements with the plaintiffs at their maturity, that then the plaintiffs cannot recover in this suit, and the Court sitting as a jury is not to consider the question of their ability to meet all their obligations to other parties.

And in considering the question whether the firm of August Hellweg had a reasonable expectation of being able to comply with the terms of their purchases, the Court as a jury may consider their indebtedness to others as affecting the reasonableness of such expectations.   (Granted.)

*Defendant's Prayer No. 3.*—If the Court as a jury believe from the evidence that the plaintiffs had been selling coal to the firm of August Hellwig for a number of years, and that in their usual course of business the plaintiffs sold and delivered the coal mentioned in these proceedings to the said firm of August Hellweg on credit, as given in evidence, and that said purchases were made without any fraud on the part of said firm of August Hellweg, then the verdict must be for the defendant.   (Granted).

*Defendant's Fourth Prayer.*—If the Court as a jury shall find that the plaintiffs had been selling coal to the firm of August Hellweg for a number of years on credit, and that the coal so sold and delivered by the plaintiffs to said firm of Hellweg was dumped on piles in said Hellweg's coal yard according to the number and grades, and that said Hellweg also bought coal from other dealers and such coal was also put in piles with coal purchased from the plaintiffs and commingled in the usual course of trade.   And if the jury shall further find that said commingling was made in the course of trade with the full knowledge and consent of the plaintiffs, and if the jury find that there was coal on said piles purchased by A. Hellweg from others in the possession of the said Hellweg, and that the plaintiffs in their replevin took all the coal in said Hellweg's coal yard and also the coal purchased from other people, then by said commingling, if made in good faith and with their knowledge and consent, the plaintiffs cannot maintain this action.   (Rejected).

The cause was argued before McSHERRY, C. J., BRYAN, PAGE, ROBERTS and BOYD, JJ.

*D. K. E. Fisher* (with whom were *Wm. A. Fisher* and *W. Cabell Brnce* on the brief), for the appellants.

Julius Hellweg testified below that when his firm pur-
chased the coal they expected honestly to pay for it when
their obligations to do so matured, their expectations being
based on their collections and business and profits and
property that they thought they were able to pay for all
they ever ordered, and that they were honest in their inten-
tions and felt sure they could pay this indebtedness when
they contracted the same, and that they intended to pay,
and thought they were solvent and able to do so. Upon
the state of facts set forth, the appellants, by their first
prayer, asked the Court below, if it found as a matter of
fact that at the time of the purchase of the coal for which
the replevin was issued, the Hellwegs knew themselves to
be involvent, *or had good reasons to know themselves to be
insolvent, and had no reasonable expectations of paying for the
same*, and found the other facts mentioned in the prayer,
then to rule that the appellants were entitled to recover.
This prayer was rejected, and the action of the Court in re-
jecting it, taken in connection with the rulings of the Court
on the other prayers of the appellants and appellees, and
with the special findings of the Court, sufficiently show that
the view taken by the Court of the law of the case and
which it adopted for its guidance, sitting as a jury, was that
even though at the times of the sales and the execution of
the notes the Hellwegs *had good reasons to know themselves
to be insolvent*, and had no reasonable expectation of paying
for the coal, the appellants were not entitled to a verdict
unless the Hellwegs at that time actually *knew or realized*
(for that is what it comes to) themselves to be insolvent, and
entertained an expectation of making payment which they
*knew or realized* to be unreasonable. The Hellwegs not
knowing or *realizing* themselves at the time to be insolvent
and believing that an unreasonable expectation of payment
was reasonable, it made no difference that a third person
surrounded by the same conditions, but not solicited by the
same interested hopes and fears could not have founded
upon these conditions a reasonable expectation of ability to

pay, and consequently an indefeasible title to the coal vested in the Hellwegs.

The issue of the law between the appellants and the appellee on this appeal, is at least sharply defined. The appellants will contend that to make the question whether a vendor can rescind a sale and reclaim his goods by replevin, turn upon the decree to which an insolvent debtor was the cheat of his own lack of reasonable perspicacity or misguided optimism at the time of sale, is to suggest a wholly untenable rule of action. A merchant who has good reasons to know that he is insolvent, must be presumed to know that he is insolvent, and must be presumed to intend all the natural consequences of his own acts. If full familiarity with the existing state of his assets and liabilities would satisfy a " disinterested " third person that he is in failing circumstances, it ought to satisfy him, and he cannot be heard to say that though his position was such as to apprize him of his insolvency, he did not realize it. If he is so situated as to see, if his sight is not refracted by delusion, or he does not willfully refuse to see that the natural consequence of his purchasing goods on credit is subsequent inability to pay for them, he must be inferred to have contemplated at the time of purchase that as well as all other normal results of his conduct and, therefore, be as fully chargeable with an intention not to pay at that time as if he had actually in point of fact harbored such an intention at that time. From the very nature of things it is in most such cases practically impossible for the plaintiff in a replevin to prove that the insolvent knew or realized that he was insolvent, and did not *bona fide* believe in the depths of his own consciousness an unreasonable expectation of payment to be reasonable. The utmost that he should be called upon to do is to show that the pecuniary condition of the vendee was such that the vendee was insolvent, and was surrounded by such good proofs of it that he could not reasonably expect to fulfill his engagements when contracted and the law should do the rest. What sort of answer is it

for a debtor to say :  " I was insolvent; I had good reasons
for knowing myself to be so ; I had no reasonable expecta-
tion of paying for goods I bought, and now that my judg-
ment is no longer warped by the disturbing influences of
my struggle, I see this plainly ; but I was at the time dis-
tracted by alternating hopes and fears.  My credit as a
merchant, my livelihood, the support of my family, all de-
pended upon my continuance in business.  I had seen tight
times and met losses before, and I thought I could pull
through.  Notwithstanding the fact that any disinterested
person in my position could have seen that I could not pay,
*I* intended to pay, and thought I was solvent and would be
able to do so."  " The testimony," said JUDGE SWAYNE, in
*Farrin* v. *Crawford et al.*, 2 Natl. Bankrupt, Reg. 606 and
607, " shows clearly, and it is admitted, that Farrin was insol-
vent, largely and hopelessly, in the month of November, 1868,
but he says *he did not know it* till after the assignment.  But
he knew his paper was under protest since the middle of
November and remained unpaid ; that he owed at least
from seventy-five to ninety thousand dollars against which
he could count up only one hundred and two thousand dol-
lars assets and this by a rough estimate.  And he admits
himself that the statement afterwards made up showing him
to be twenty to thirty thousand dollars insolvent was made
from his lumber business books by his own bookkeeper, and
this does not include his ' outside operations.'  Making all
possible allowances, the conclusion is irresistible that he
either knew he was insolvent when he thus paid the railroad
bills, or else wilfully and purposely refuses to know by shut-
ting his eyes to the facts before him ; for as before remarked,
he was an accomplished bookkeeper himself.  *In either case,
the result arrived at is the same—in the one a fact, in the other
an unavoidable legal inference equally as fatal.*  Assuming
then, that he was insolvent and knew it, it follows at once
that any payments then made by Farrin to any creditors in
full were made with the intent to prefer, and therefore acts
of bankruptcy within the meaning of section thirty-nine."

" Thus," said the Court in *Talcott* v. *Henderson*, 31 Ohio
St. 165, " while it may be said that fraud must be proved
and will not be presumed, there *is* a presumption that every
reasonable person anticipates and intends the ordinary and
probable consequences of known causes and conditions.
Hence, if a purchaser of goods has knowledge of his own
insolvency and of his inability to pay for them, his *intention
not to pay should be presumed.* I would go a step farther,
and hold *that an insolvent purchaser, without reasonable ex-
pectation of ability to pay, should be presumed to intend not to
pay.*" " The rule stated by *Hilliard on Sales*, meets with my
approval, to-wit : ' Where the purchaser is insolvent and has
no reasonable expectations or intention of paying for the
goods, he gains no title against the vendor.' It is not neces-
sary to allege or show false pretense or other direct artifice.
When no questions are asked, no false pretenses, no artifice
resorted to, silence is not fraud, but concealment of insol-
vency, with no reasonable expectation of paying, renders a
sale fraudulent." NELSON, D. J., in *Davis et al.* v. *Stewart,
assignee*, 8 Fed. Rep. 804.

In conclusion, it is submitted, without attempting to recon-
cile all the cases in which different rules have been suggested,
that the only true rule in a case of this sort is this : If a
vendee knows or has good reasons, which is the same thing,
to know himself at the time of making a purchase to be in-
solvent, and knows then or has good reasons to know then
that he has no reasonable expectation of paying for the
goods, the vendor should have the right within a reasonable
time, so long as the goods remain in specie, and no innocent
purchaser for value has acquired title to repudiate the trans-
action, restore or offer to restore the vendee, so far as prac-
ticable, to his former position, and to reclaim possession of
the goods on the ground that no title passed to the vendee,
because of his constructive fraud in contracting with the
vendor at a time when he could not reasonably anticipate
the fulfillment of his engagements. *Seligman* v. *Kauffman*,
8 Cal. 215 ; *Alvarez* v. *Brannan*, 7 Cal. 508.

*H. L. Denny* (with whom was *James W. Denny* on the brief), for the appellees.

The instructions granted the plaintiff were all he could possibly have asked, and more favorable than the facts warranted. There is not a particle of evidence in the case of any want of good faith. The prayers granted draw no distinction between an honest and dishonest debtor. They allow the jury to place its own construction on what were reasonable expectations, even in the absence of any proof on which to found such prayers, and the plaintiffs cannot complain. All the testimony shows convincingly that the Hellwegs intended to pay for all their purchases and had a reasonable expectation of doing so. These expectations were well founded on a business long conducted, on a good trade, substantial assets and financial prospects, profits to arise, orders in hand, and their high character and capacity. Their expectation was not a mere delusive hope that induced them to continue to contract new debts and to pay off old ones. An act which is lawful when done in good faith may be unlawful when done in bad faith. If it turns out that both the vendor and vendee are mistaken as to the solvency of the vendee, it is no ground to rescind a contract of sale. The absence of a reasonable expectation is equivalent to a fraudulent intent:

· The cases say there must be some fraud conducing to the contract to justify its rescission. 6 *Southern Law Review*, 482; *Foley* v. *Mason;* 6 Md. 36. When a sale and delivery is made without fraud or mistake, the sale stands. *McElroy* v. *Seely*, 61 Md. 389; *Powell* v. *Bradlee*, 9 Gill and Johnson, 220; *Horwitz* v. *Ellinger*, 31 Md. 504. If no inquiries are made the vendee is not required to disclose his pecuniary condition either at or before a sale, even although he is insolvent and knows it at the time. *Benj. on Sales* (6th ed.), top page, 443; *Tiedman on Sales*, secs. 170 and 171; *Peters* v. *Hilles*, 48 Md. 506; *Benish* v *Weil*, 69 Md. 276; *Dellone* v. *Hull*, 47 Md. 112, 115; *Ferrall* v. *Farnen*, 67 Md. 76; *Mitchell* v. *Worden*, 20 Barb. Sup. Ct.

R. 253 ; *Nicholas* v. *Pinner*, 18 N. Y. 295, 299 ; *Smith* v. *Smith, Murphy & Co.*, 21 Pa. St. 367 ; *Donelson, assignee,* v. *Farwell et al.*, 93 U. S. 631. In *Benish* v. *Weil,* 69 Md. 276, the facts show a want of good faith and impute a fraudulent intent, and a fair interpretation of the words " without any reasonable expectation," means without any intention to pay, or with an intent not to pay. In other words, that the transaction was not *bona fide. Jaffrey* v. *Brown,* 29 Fed. Rep. 477.

There must be some element of unfairness to enable a vendor to rescind a sale. *Dellone* v. *Hull,* 47 Md. 115, the Court says : " That there is no doubt of the proposition that where goods are obtained by means of a fraudulent purchase the vendor has the right to disaffirm the contract so as to revest the property in himself. "

In many cases, the law notices the intent, as ascertained from the facts, for the purpose of determining its validity. If goods are obtained under the form of a purchase, with intent not to pay for them, it is a fraudulent purchase ; and when this Court says, that a purchase by one who knows himself to be insolvent, and without any reasonable expectation of paying for such purchase, may be rescinded, it simply means that it is a fraudulent transaction, and that such facts must lead to the logical conclusion, that there was an intention on the part of the vendee not to pay when the contract was made. The facts must impute a fraudulent intent. The vendor cannot disaffirm a sale fairly made. *Benesh* v. *Weil,* 69 Md. 276 ; *Peters* v. *Hilles,* 48 Md. 506 ; *Dellone* v. *Hull,* 47 Md. 112. In this case, the vendors had every opportunity to use a due degree of caution by inquiries from the vendees or others, if they wished to avoid the risks incident to giving credit. They were, or could have been quite familiar with the exact business of the Hellwegs by the asking, because they admit the Hellwegs were square dealing men and had never concealed anything from them or made any false representations, and plaintiffs' witness testified that the Hellwegs did not know they were

insolvent, and fully expected from their resources and business to pay for their purchases at maturity, and believed they were able to do so when they contracted the debt.

BRYAN, J., delivered the opinion of the Court.

This was an action of replevin, brought by the appellants against the appellee. The judgment being for the defendant, the plaintiffs appealed.

It appeared in evidence that Julius and August Hellweg, partners under the firm name of August Hellweg, had been dealing with Diggs & Co. about twelve years, and had during that time purchased from them large quantities of coal ; that in August, 1896, they were indebted to Diggs & Co. more than nine thousand dollars ; that more than two thousand dollars of this sum had accrued between the first and thirteenth days of August, eighteen hundred and ninety-six ; that on the fifteenth day of August the Hellwegs made a deed of trust to Harry L. Denny, the defendant, which conveyed to him all their property for the benefit of their creditors, without preference or priority. There was evidence on both sides bearing on the question whether the Hellwegs at the time of purchasing the coal were insolvent and knew themselves to be so, and had no reasonable expectation of paying for it. The case was tried. before the Court without a jury. The Court found a verdict for the defendant ; and at the same time made a special finding of facts as follows :    " I find from the evidence in this case, as facts :

1. That at the time of the purchase of the coal for which the replevin in this case was issued, the purchasers, August and Julius Hellweg, did not know themselves to be insolvent.

2. That said August and Julius Hellweg had an expectation of paying for said coal, in accordance with their contracts of purchase based upon their assets and their experience of their business in former years, and that such expectation was in their estimatiou reasonable, but a disinterested

person capable of comprehending the real situation of their affairs could not have founded a reasonable ·expectation of meeting their engagements with the plaintiffs from all the resources shown to have been within the reach of said firm at the time said purchases were made ; and this without regard to the question of their ability to meet all their obligations to other parties."

The questions in this case have no connection with proceedings under our insolvent system. If the purchase of the coal was fraudulent, the plaintiffs had a right to disaffirm the sale, and to take it under the writ of replevin. The Court in substance ruled on the prayers of the plaintiff that if at the time of the purchase the buyers were insolvent and knew themselves to be so, and had no reasonable expectation of paying for the coal, then the purchase was fraudulent. But the Court refused to rule that the transaction was fraudulent if the purchasers had good reason to know themselves to be insolvent. The Court on the prayer of the defendant ruled that if the purchasers at the time of the sales were insolvent and knew themselves to be so, they were under no obligation to disclose such facts to the plaintiffs and such failure to disclose did not make the purchases fraudulent ; and that if the purchasers had a reasonable expectation of paying for the coal at the maturity of the debt, the purchase was not fraudulent ; and that the Court was not to consider the question of their ability to pay all their debts to other persons ; and that the Court might consider their indebtedness to other persons as affecting the reasonableness of their expectation to pay for the coal. This instruction is modelled on the second prayer of the appellant in *Peters* v. *Hilles*, 48 Maryland, 506. The leading case on this subject is *Powell* v. *Bradlee*, 9 Gill and Johnson, 222. In that case the Court approved the sixth instruction to the jury, given by the trial Court, to the effect that the purchase of goods vested a good title in the buyer, provided that at the time of the sale and delivery he intended to pay for them, although he was then insolvent and knew the fact. But in

considering the fourth and fifth instructions given to the jury, the Court decided that if the purchaser was insolvent and was aware of his insolvency and had no reasonable expectation of paying for the goods, then the purchase was fraudulent. And in considering the fourth prayer of the defendant the Court decided that the purchase was not made fraudulent by the facts that the purchaser knew himself to be insolvent at the time of the purchase, and did not so inform the seller, although he knew at the time that the seller was ignorant of the fact and had not the means of ascertaining it. It was said : " The prayer seems to have been founded on the idea, that the sale was fraudulent if the vendees knew themselves to be insolvent at the time of the purchase and did not communicate that circumstance to the vendors ; knowing at the time that they were ignorant of the fact, and had not the means of becoming acquainted with it. The law, it seems, does not sanction such an elevated tone of morality in mercantile dealings, as would have warranted the granting of the prayer, to the extent asked for by the defendants in this case. Such a strict and. rigid doctrine, considering the vicissitudes and changes incident to mercantile life, would go far to cramp the operation of trade and commerce, and has not received the countenance of the Courts of Justice, either in this State or elsewhere, as far as we have been able to ascertain. Moreover,. the proceeds of sales of the property purchased might have enabled them to fulfill their contract, and from anything which appears might have been intended to be applied to that purpose." *Powell* v. *Bradlee* has always been considered as settling the law in this State in regard to sales made: under the circumstances mentioned.

The granted prayers in this case ruled what the verdict: should be on a hypothetical state of facts ; but the special. finding by the Court determined positively what the facts were. This finding is a part of the verdict; and when the Court rendered judgment it was a decision that these facts defeated the plaintiffs. The question is properly presented

by the plaintiffs' motion for a judgment *non obstante vere-dicto.*

The Hellwegs were not guilty of fraud unless they intended to get the coal without paying for it. And if they did not know themselves to be insolvent at the time of the purchase ; and if founding their opinion on their assets and their experience in business during former years, they had a reasonable expectation of making payment, it could not be inferred that they intended to get the coal without paying for it. They had a right to conduct their business according to their own judgment, provided it was not exercised *mala fide* or recklessly; and they could not be required to conform their conduct to the opinions which other persons might form, who had no interest in the matter. The reasonableness of the expectation of payment would, of course, be decided by the facts known to exist at the time of the purchase, and not by occurrences which took place afterwards. If the Hellwegs did not know that they were insolvent at the time of the purchase of the coal, and they had a reasonable expectation of paying, they are not to be convicted of a fraudulent intent. The counsel for the appellants contended that if they had good reason to know that they were insolvent, they ought to be visited with the consequences of a knowledge of that fact. We do not find this rule established by the authorities ; and there are many difficulties in the way of its practical application. A man of cool, calm and steady judgment, who was not liable to be swayed by his hopes and wishes, might make an accurate estimate of the value of his assets, and see clearly the improbability of paying his debts, and therefore come to the conclusion that he was insolvent. Another man equally honest, but less intelligent, and who was more ready to hope for the best, and to believe what he earnestly desired, might in perfect sincerity think that he would be able to make an advantageous disposition of his property, and pay all his debts. The future is usually uncertain, and it appears very differently to men of different temperaments and

characteristics. How is a jury to determine which of these
two men had good reason for his opinion ? Is it to arrive
at a conclusion by hearing evidence of dispositions and
relative mental powers ? In marked contrast to this pro-
posed rule, there is another one of easy application, and
sufficiently definite for the purposes of practical justice. If
a debtor intends to pay his debts, and in the honest exer-
cise of such judgment as belongs to ordinary men, he be-
lieves that he will be able to do so, then, even if he has
made a mistake in his ability to pay, he is not to be put on
the footing of one who knows himself to be insolvent.
This latter rule fully meets the requirements of justice, and
is in harmony with our leading authority.

Of course we cannot review the special finding of facts.
Upon it, considered as an essential part of the general ver-
dict, the judgment was properly rendered for the defendants.

*Judgment affirmed.*

(Decided June 23rd, 1897). .