## OTHO N. JOHNSON vs. GRANT STOCKHAM AND CLARA E. STOCKHAM.

*Attachment for Fraud—Breach of Promise to Pay for Goods Not Fraud—Disposition of Property in Fraud of Creditors—Bill of Sale to Bona Fide Creditor.*

Plaintiff sold a quantity of fertilizer and seed-wheat to defendant, who gave his notes for the price thereof and promised to deliver wheat as soon as threshed to plaintiff in satisfaction of the same. Delivery not having been made, plaintiff issued an attachment alleging that the debt had been fraudulently contracted. *Held*, that there was no evidence legally sufficient to show that defendant did not intend to pay for the goods when he purchased them, and that the breach of his promise to deliver the wheat when threshed is not *per se* actionable fraud, because such fraud consists in false representation as to an existing fact, and not in the failure to perform a promise for the future.

The execution of a bill of sale to secure a *bona fide* creditor is not to be considered as an assignment or disposition of property with intent to defraud creditors, within the meaning of the attachment law, merely because it results in giving to the vendee a preference over other *bona fide* creditors.

Appeal from the Superior Court of Baltimore City (RITCHIE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE and SCHMUCKER, JJ.

*Stevenson A. Williams* and *Vernon Cook* (with whom were *Gans & Haman* on the brief), for the appellant.

Upon the testimony of Johnson, if the same is believed, there can be no doubt (1) that the bill of sale made by the appellee to Penning was intended to defraud the appellant. It was a transfer to Penning of the wheat crop which had been so often promised to Johnson, and in which Johnson's money in one way or the other, had been so often invested. Such a bill of sale of necessity took away from Johnson the security which had been promised him. The cases

which seem most nearly to resemble this case are the follow-
ing: *Bank of Commerce* v. *Payne*, 86 Ky. 446 ; *German Bank*
v. *Meyer*, 55 Hun. 86 ; *Hardie* v. *Colvin*, 43 La. Ann. 851 ;
*Senter* v. *Mitchell*, 16 Fed. Rep. 206. The intent of the
grantee in such bill of sale is immaterial in a case of this
kind. *Drake on Attachments*, sec. 71 *b*; *Nichthauser* v.
*Lehman*, 39 N. Y. Supp. 1091.

(2.) The larger part of the claim sued on is for goods
sold and· delivered to the appellees after they had made said
bill of sale, but the testimony of Johnson shows that the
existence of the said bill of sale was denied by Stockham.
Thus in effect Stockham represented that he or his wife
owned this wheat, which in fact they had disposed of by a
bill of sale. Such a misrepresentation is a fraud upon the
vendor, and shows that the debt in question was fraudu-
lently contracted. *Benjamin on Sales*, Bennett's edition,
page 442. In fact, when we consider the continued course
of misrepresentation and deceit practiced by Stockham, we
cannot fail to conclude that throughout the whole transac-
tion, from its very inception, Stockham intended to cheat
and defraud the appellant. Now, as to the testimony of
Stockham, it is true that in many details he contradicts the
statements of Johnson, but to a certain extent he admits the
truth of the crucial facts stated by Johnson. Stockham,
when asked in regard to the agreement with Johnson, admits
that *he had promised to give Johnson the preference in a sale
of the wheat*, provided, of course, Johnson would give the
market price thereof.

This admission, taken in connection with the bill of sale,
is sufficient to prove a fraudulent assignment by the ap-
pellees. What right had Stockham to transfer this wheat
to Penning by bill of sales, if, for a valuable consideration,
he had promised Johnson to give him the preference in dis-
posing of the wheat, and if Johnson's bill was to be paid
when the wheat was sold? How could Stockham in any
sense give Johnson a preference in regard to this wheat
after the same had been assigned to Pennning? Yet this is

the testimony of the defendant himself.   The Court below, in an oral opinion, held that the evidence in this case upon the question of fraud was in a state of equipoise, but we respectfully insist that if we throw out all of the testimony for the plaintiff that on the statement of Stockham alone the fraud is shown.   Stockham promises to give Johnson a certain preference.   On the faith of this promise Johnson sells him goods on long credits, and then Stockham makes a transfer of his property, which puts it out of his power to give the preference which he had promised and which takes away from Johnson the security which had been promised him.   Then again, we insist that the testimony of Johnson as a whole, when compared with that of Stockham, is so much more straightforward and probable ; that we must accept it rather than that of the latter, who is shown by his bill of sale to have violated his promise, who is shown by his note of July 27th, 1898, to have made a false and misleading statement ; and who in numerous ways evinces his animosity toward the appellant, and concludes by asking the Court to believe his most absurd statement that Johnson had formed a premeditated plan to murder him.   This latter story is conclusively disproved by the witness Ford, who is Stockham's cousin.   This witness also corroborates Johnson's testimony in other particulars.   He shows that even after the alleged quarrel on the road, Stockham said that he expected to have Johnson handle his wheat.

*S. S. Field* (with whom was *Samuel Regester* on the brief), for the appellees.

There is no doubt that Stockham intended and expected to sell to Johnson; but he can hardly be blamed for not doing so when Johnson wanted to buy his wheat ten cents per bushel below its value.   But even if Stockham promised to sell to Johnson, and afterwards, without cause, refused to do so, that would not be fraud. One of the essential elements of fraud by misrepresentation is : " It must be of a fact at the time or previously existing and *not a mere*

*promise for the future."*    8 *Ency. of Law*, 1st ed. 637; *Fenwick* v. *Grimes*, 5 Cranch, C. C. 439; *Robertson* v. *Parks*, 76 Md. 119, 123. *"Fraud cannot be predicated of a promise not performed* for the purpose of avoiding a written instrument *or a bargain of any kind."*   *Long* v. *Woodman*, 58 Maine, 49, 54. Moreover there must be a fraudulent *design*.    An attachment cannot be sustained on the ground of a debt *fraudulently* contracted, if in fact it was *honestly* contracted, with the full intention and expectation of paying it.   8 *Enc. of Law*, 1st ed. 829; *Diggs* v. *Denny*, 86 Md. 119; *Edelhoff* v. *Horner*, 86 Md. 595.

That Stockham never had and *has not now*, any intention to cheat Johnson out of a cent the evidence clearly shows.   Stockham testifies that he had no intention to defraud Mr. Johnson, but expected and intended and still intends to pay him in full, and would have paid his claim when due out of the proceeds of this wheat, but for these proceedings.   He voluntarily gave notes signed by his wife so as to " make them good," and paid part of one of them. And Johnson testifies : " Do you mean to swear that you believe that at the time Mr. Stockham bought the fertilizer and seed-wheat he intended to cheat you out of it.   "A. I did not think so at the time; no, sir."   " 47 X-q. But will you now swear that you *now* believe that he then intended to cheat you out of the value of this. fertilizer and seed-wheat ?   "A. *I wouldn't like to say that ; no, sir."*

Johnson does not believe that Stockham intended to cheat him; yet his counsel asks this Court to believe it.   Johnson offers no evidence except his own testimony to convict Stockham of fraud, and from that he asks this Honorable Court to say, Guilty; when, he, upon his oath, *"wouldn't like to say that ; no, sir."*

" But to avoid the sale on the ground of fraud a dishonest intention must exist at the time in the mind of the vendee—an actual intention to cheat, or to do an act, the necessary result of which will be to defraud the seller." 8 *Enc. of Law*, 1st ed. 829.   And if there was no fraud

for which Johnson could have avoided the sales, there is none to sustain an attachment. *Hodge and McLane on Attachments*, sec. 250 ; *Dellone* v. *Hull*, 47 Md. 113. Not only was no fraud committed, but after full knowledge of everything, which he alleges to show fraud, Johnson *affirms* the contracts by *suing on the notes*. *Dellone* v. *Hull*, 47 Md. 113. If, after taking the notes for the goods, he desired by this attachment to say that the goods were obtained by *fraud*, he should have tendered the notes and filed as his vouchers, "not the notes but an open account, " for the value of the goods. *Hodge and McLane on Att.*, sec. 250; *Summers* v. *Oberndorf*, 73 Md. 313. .

We have thus far submitted that the plaintiff has entirely failed to prove any fraud against Grant Stockham; *but against Mrs. Stockham he has not attempted to prove fraud.* Even if Grant Stockham had committed a fraud, it could not be imputed to his wife, on the ground that he was her agent. A just rule forbids a principal to retain the fruit of his agent's fraud; but no rule of law or justice requires a Court to find that a principal *committed* a fraud in which he did not in fact participate. In this case the affidavit alleges that Mr. and Mrs. Stockham *jointly* committed the fraud, and upon that writs issued under which *her* property was seized; not property which had been acquired by fraud, but her own honestly acquired property, seized and taken from her control, because the plaintiff swore that *she* had committed certain frauds.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from an order of the Superior Court of Baltimore City quashing an attachment for fraud sued out of that Court by the appellant against the appellees, and based upon two promissory notes given by the appellees to the appellant, and upon an open account alleged to be due to the appellant from Grant Stockham, one of the appellees, as agent of his wife, Clara E. Stockham, the other appellee, all of which claims aggregate $450.81.

The affidavit charges only two of the four grounds specified in the statute, viz :

1st. That the appellees have assigned or disposed of, or are about to assign or dispose of their property, or some portion thereof, with intent to defraud their creditors.

2nd. That the appellees fraudulently contracted the debt, or incurred the obligation aforesaid.

The appellees, who are residents of Harford County, Maryland, appeared specially for the purpose only of moving to quash, and specifically deny all the charges of the affidavit as false and fraudulent, and urge further in support of their motion:

1st. That there is no sufficient voucher filed.

2nd. That there is no sufficient affidavit filed.

3rd. That there are are other defects apparent upon the face of the proceedings.

Testimony was taken upon the questions of facts raised by the motion to quash, and these questions will now be considered in their reverse order. The testimony offered to show that the debt was fraudulently contracted, or the obligation fraudulently incurred, is that of the appellant alone, who testified as follows : " Mr. Stockham asked me if I would furnish him fertilizer to grow a crop of wheat, telling me he would deliver the wheat to me, from which I would take the amount of my bill for fertilizer. I told him I would. After this, he said he was disappointed in getting the money for a horse he had sold, with which he had expected to buy seed-wheat, and asked me if I would furnish the wheat on the same terms; I hesitated about doing it, but finally did; he agreed to give me a shorter note on the wheat, which I could use in case of necessity. I delivered it all to him, the fertilizer and the wheat, and got the notes."

In response to a question as to the purpose for which Stockham was to deliver the wheat, he said, " He told me to make me safe on my deal with the fertilizer ; *besides, that is a part of my business, handling wheat, buying and*

*shipping wheat.* He said I could feel perfectly safe, for I would be sure to get the wheat; he said that a number of times." The appellant also testified that without such assurance he would not have sold him the fertilizer, not within the last three or four years. These extracts from the appellant's testimony state his case in its full strength. He and Grant Stockham were the only witnesses as to the purchase of the wheat and fertilizer, and the other articles purchased, and the latter flatly contradicts him, declaring that he did not promise to deliver him the wheat when threshed to secure these purchases, or any of them, but only that he would sell him the wheat to be grown, if he would give him the market price; that no time was fixed for such sale or delivery, and that if the attachment had not been brought, the notes on which it is founded would have been paid at maturity. Nor does the record disclose any conduct or circumstances tending to create a suspicion that the debts were in fact fraudulently contracted, notwithstanding the denial of Stockham. The testimony of the appellant, accepted at its utmost value, and without regard to Stockham's countervailing testimony, would only prove a promise to deliver the wheat when threshed——that he might, out of the proceeds of sale, retain the debt due him, and it is well settled that, in an action for deceit, a false statement, in order to constitute actionable fraud, must be of a material fact, at the time, or previously, existing, made for the purpose of being acted on, and not a mere promise for the future. 5 *Amer. and Eng. Ency. of Law,* 1st edition, p. 635. The representation to be material must be in respect of an ascertainable fact. *Buschman & Cook* v. *Codd,* 52 Md. 207; *Robertson* v. *Parks,* 76 Md. 132. " Fraud cannot be predicated of a promise not performed, for the purpose of avoiding a bargain of any kind." *Fisher* v. *New York Common Pleas,* 18th Wendell, 608. In *Long* v. *Woodman,* 58 Maine, 49, the action was to recover damages for inducing plaintiff to convey to defendant certain real estate, in consideration of a loan for two years, defendant promising to execute

and deliver to plaintiff a bond for the reconveyance of the land, upon payment of the loan. The Court said, " The gist of the plaintiff's complaint is that a promise made has not been performed. If the.promise had been to pay a sum of money, instead of giving a bond, no action for deceit could have been maintained, though the money was not paid at the stipulated time. This case in no respect differs from a broken promise to pay for goods. The goods are delivered upon the expectation that the promise to pay will be performed. The deed was given upon the expectation that the bond would be delivered in accordance with the promise of the grantee." It is true that where one, at the time intending not to pay for goods, induces the owner to sell them on credit, it is a debt fraudulently contracted, and the creditor may reclaim the goods, if they have not passed into the hands of a *bona fide* purchaser, or he may proceed by attachment under the statute, but there must have been in the mind of the vendee, at the time, an actual intention to cheat, or to do an act the necessary result of which will be to defraud the seller. 8 *Amer. & Eng. Ency. of Law*, 1st ed. 829 ; 3 *Amer. & Eng. Ency. of Law*, 2nd ed. 202. But this intention is not made to appear by the showing of a mere promise to do some future act, and the subsequent failure to fulfill such promise. *Diggs* v. *Denny*, 86 Md. 129.

No hard and fast rule can be laid down by which to establish such fraudulent intent, though it may be inferred from the conduct, action and method of dealing adopted by a person on the particular occasion, whether it was fraudulent or not. In the present case Grant Stockham testified, that when the goods were purchased he intended to pay for them, and that he would have done so at the maturity of the notes if he had not been prevented by this attachment. It appears from the record that he gave a note of $100 Nov. 1st, 1897, at ten months, for the fertilizer, and that he gave a note about the same time for about $125.00 for the seed-wheat, on shorter time, according to

the agreement, on both of which notes he voluntarily gave his wife as security, and that the last-mentioned note has been twice renewed, and has been reduced from $125.00 to $84, as of June 15th, 1898. The first note matured Sept. 1st, 1898, and the last Oct. 15th, 1898, and the attachment was issued August 5th, 1898. It also appears from an examination of the open account of $266.81, that the first item therein, $57.19, represented a *disputed balance* on an old account contracted sometime prior to the sale of the fertilizer and seed-wheat, and before the alleged fraudulent misrepresentations. It also appears that $150 of this $266.81 was for fertilizer sold in the spring of 1898 for the tomato crop, and there is not a word in the testimony to show that this was sold upon the promise or faith of the wheat crop. It does however appear, that in payment for this last-mentioned fertilizer, Johnson, on the 6th of July, 1898, received from Grant Stockham a draft upon E. V. Stockham, a responsible canner of tomatoes, who was to purchase the same, and which draft E. V. Stockham accepted, payable when the tomatoes were delivered, and that Johnson thereupon receipted to Grant Stockham the account of $150 as paid by said draft, but that he subsequently issued an attachment in Harford County upon the same debt sued on here, and laid it in the hands of all the tenants of Grant Stockham, who were to deliver these tomatoes, and in the hands of E. V. Stockman also, thus hindering and delaying the delivery of the tomatoes to the canner, and the payment of the draft he had received. From a review of the conduct, actions and dealings of Grant Stockham in this matter, it cannot be seriously contended that we would be warranted in finding that he intended not to pay for these goods when they were purchased, or that he had then any intention to do any act, the result of which would be to defraud Johnson. Accordingly we find that Johnson himself, on cross-examination, acknowledged that he could not say he believed, either at the time of the purchase, or when testifying, that Stockham intended to cheat

him out of the value of the fertilizer and seed-wheat, and this admission must effectually dispose of the charge that the debt was fraudulently contracted.

Nor do we find any better ground for the charge that the appellees had assigned, disposed of, or concealed, or were about to assign, dispose of, or conceal, any part of their property with intent to defraud their creditors.    The only evidence relied on for this purpose was the execution of the bill of sale of the wheat to O. P. Penning and the public sale of stock on the farm in March, 1898, and these were the only assignments or dispositions of property disclosed by the record as made or attempted.    There is no evidence whatever of concealment or of disposition to conceal.    The bill of sale to Penning was executed March 3rd, 1898, for a debt of $1,606.64, the *bona fides* of which has not been questioned.  No authority has been produced, and we apprehend none can be produced, for the proposition that the *mere execution of a bill of sale*, to secure a *bona fide* creditor, because it results in giving to the vendee a preference over other *bona fide* creditors, can be held an assignment or disposition with intent to defraud creditors, within the meaning of our attachment law.    Such a conveyance, if made with intent both on the part of vendor and vendee to hinder and delay the other creditors of the vendor and not primarily to discharge or to secure the debt of the particular creditor, would be a fraudulent conveyance under the Statute of Elizabeth, and perhaps might be fraudulent within the meaning of the attachment law, though we are not to be understood as so deciding.

We have examined the cases cited by the appellant to sustain the charge of fraudulent assignment in this case, but none of them are applicable.    All of them are cases in which the attaching creditor held a *valid lien* upon the property conveyed, and in which the effect of the assignment was to defeat the lien, or to prevent the exercise of the right to enforce it.    Here the attaching creditor had no lien, nothing even upon his own testimony beyond a bare prom-

ise to sell him certain wheat to be thereafter grown, and we have seen that the failure to fulfill such a promise does not constitute actionable fraud. The record shows that the sale of stock on the farm was publicly made after advertisement, and that out of the proceeds Penning received a considerable part of his claim, secured thereout by the bill of sale. No creditor of Grant Stockham appears to have complained of this sale of stock, and Johnson himself only complained that the wheat was then advertised. The wheat was loaded on the vessel by Penning's order, and shipped to Baltimore for his account. This was done in opposition to Stockham's wishes, who wanted to hold it until October, but Penning would not consent, and he received the proceeds of the wheat. In none of these things is there any evidence of any fraudulent assignment or disposition of property or of any purpose or intention to make such assignment or disposition. Having thus determined that the attachment cannot be sustained upon either of the grounds alleged in the affidavit, it is unnecessary to consider the other grounds assigned in the motion to quash.

*Order affirmed with costs above and below.*

(Decided June 20th, 1899).