### DANIEL W. MORRILL *vs.* CHARLES BLACKMAN.

In replevin to recover goods claimed to have been fraudulently purchased of the plaintiff by the defendant, the court charged the jury that "if an insolvent, who knows that he can not longer continue the business he is carrying on, and that his property is liable at any moment to be taken by his creditors, and in that case that he will not be able to pay for goods purchased on new credit, purchases goods on credit without disclosing his pecuniary condition, his willful concealment amounts to fraud." Held to be erroneous.

A knowledge that one can not longer continue his business does not necessarily imply a knowledge that he is insolvent. It may be merely a losing business, that would require more money than he has the means of procuring.

Nor does the fact that he knows that his property is liable to be taken at any time by his creditors, imply a knowledge that he is insolvent.

To constitute fraud in the purchase of goods there must exist an intention not to pay for them.

And where this exists the purchaser is guilty of fraud whether he discloses his pecuniary condition or not.

REPLEVIN for goods unlawfully detained; brought to the Court of Common Pleas of New Haven County, and tried to the jury, on the general issue, before *Robinson, J.*

The goods in question had been purchased by the defendant of the plaintiff, and the latter claimed that they had been obtained by fraud. On the trial the plaintiff claimed, and offered evidence to prove, that he had had business

dealings with the defendant for several years before the sale of the goods in question; that in the fall of 1873 the defendant, being then insolvent, represented to him that he was worth from $4,000 to $5,000 above his debts; that in October, 1874, the clerk and agent of the defendant represented to the plaintiff that the defendant was able to pay for these goods; that the defendant soon after bought the goods of the plaintiff, and agreed to pay for them in carriages to be made by him; and that the defendant, when he made the agreement, knew that he was insolvent, and would be unable to perform the agreement or to pay for the goods. The defendant denied that the facts were so, and claimed that he was attached by his creditors soon after the purchase of these goods, and then made an assignment in bankruptcy.

The plaintiff requested the court to charge the jury as follows: " If an insolvent, who is carrying on business with knowledge that he can no longer continue it, and that his property is liable at any moment to be taken by his creditors, and that in that event he will not be able to pay for goods purchased on new credit, purchases goods upon credit without disclosing the circumstances to the vendor, his willful concealment thereof amounts to fraud, and his assignment passes no title in such goods to his assignor, and the vendor is entitled to his goods." The court did so charge.

The court also charged the jury as follows: " If the defendant entered into the contract in good faith, that is, with the expectation and intent to pay, though he knew himself to be insolvent, yet the property passed to him, and the plaintiff cannot maintain this action. Intentional fraud at the time must be proved to have existed in the mind of the defendant.

" The law is so that if these goods were obtained from the plaintiff by fraud of the defendant, it was no real contract of sale, and the plaintiff had a right to have them back again on demand; so that if, upon the evidence, and the law as I shall give it to you, you find that the defendant obtained these goods by fraud, then they still belong to the plaintiff, and after demanding them he would be entitled to replevy

such of them as he could find and recover damages for the loss of the rest. In the first place, then, the presumption of law is that there was no fraud; the law presumes that every transaction is honest until it is proved otherwise; and this presumption of law the evidence must overcome before you can find that the defendant has been guilty of fraud. Again, the burden of proof is upon the plaintiff to show that the fraud really existed, and unless by a preponderance of evidence the plaintiff has done this, and so done it as also to overcome the presumption of honesty of which I have spoken, then you must find that there has been no fraud on the part of the defendant. Furthermore, in a case where the fraud consists in making false representations, the person who makes them must either know them to be false, or not know them to be true. A man may really believe a matter to be one way, when actually it is just the contrary, but he is not guilty of fraud or dishonesty by telling what he believes to be true, even though it actually turn out to be false. A man tells the truth when what he says corresponds to what he knows or believes, and a mistake made in good faith is not fraud. Moreover, the fraud must be connected with the sale in question in the relation of cause and effect, that is, the false representations must to some extent operate to bring about the contract, or else it cannot be avoided on their account. In this case, then, if you find that the defendant willfully made false representations about his solvency, you must also find that these representations induced the plaintiff to sell him these goods, or else there is no such fraudulent representation as you can consider in this action.

"But fraud may also consist in the suppression of truth as well as the statement of falsehood. Concealment is in some cases as much fraud as actual false statement. When a man is bankrupt and knows that he can not pay his debts, and that a debt which he may now incur will not be paid, he has no right to incur such debt; a man by contracting a debt holds himself out as willing and able to pay it, unforeseen circumstances excepted, and if clearly foreseeing that he can not pay, he thus holds himself out as able to pay, he is guilty

Morrill *v.* Blackman.

of a false representation by act at least, and perpetrates a fraud; his very concealment of his real condition, coupled with the suggestion of ability to pay contained in his act of purchase, made knowingly and willfully, is fraudulent, and the sale so made is vitiated. Fraud of this kind is under the same rules as the other—the presumption of law is against it; the plaintiff must prove it; it must affect the sale complained of, or it is of no consequence in this case.

" To sum up, then, this portion of the case, unless you find that the defendant by his willful false representations, or by his fraudulent concealment, induced the plaintiff to sell him the goods, you will find that there was no fraud, and that so far the defendant is entitled to a verdict; if, however, you shall find that the goods were obtained from the plaintiff by fraud, and that consequently no title passed to the defendant, then the plaintiff had a right to retake them, and to recover damages for such as he might be unable to retake."

The jury having returned a verdict for the plaintiff, the defendant moved for a new trial for error in the charge of the court.

*Phelps*, in support of the motion.

*Blydenburgh*, contra.

PARK, C. J. At the request of the plaintiff the court below charged the jury as follows :—" If an insolvent, who is carrying on business with knowledge that he can no longer continue it, and that his property is liable at any moment to be taken by his creditors, and that in that event he will not be able to pay for goods purchased on new credit, purchases goods upon credit without disclosing the circumstances to the vendor, his willful concealment thereof amounts to fraud, and his assignment passes no title to such goods to his assignee, and the vendor is entitled to his goods."

We think this charge is incorrect. In the first place, it is not an element in it that the vendee knew that he was

insolvent. The fact that he knew that he could not carry on his business any longer, does not necessarily imply it. He may have been transacting a losing business, and to go on with it, might require the raising of a sum of money beyond his means of procuring, and so he may have become satisfied that he could not continue his business longer. The fact that he knew that his property was liable to be taken by his creditors at any moment, is a fact that exists in every case where a man has creditors, although not in debt to such an extent as to make him insolvent. When money is scarce and times are hard, how many persons of large property are made insolvent and utterly ruined financially by their creditors seizing their property on executions and selling it to the highest bidder. The defendant may have so regarded his affairs when it is said that he knew that in the event of his creditors seizing his property he would not be able to pay for goods purchased on new credit. What his belief was in regard to their so doing, is not made an element in the charge. He may have considered it highly improbable; so much so that he may have had no doubt of his ability to pay for the new purchases. Thus it will be seen that, under this charge, a man might be held guilty of fraud in the purchase of goods, who had an honest intention at the time to pay for them, and believed himself able to do so. This clearly is erroneous.

But it is said that the court in a subsequent part of the charge told the jury, that if the purchase was made with the intention and expectation of payment, the sale was legal, although the purchaser knew that he was insolvent; and so it is claimed that this part of the charge prevented the harm that might have been done by the first part. We do not so regard it. Here are two distinct propositions of law stated to the jury, designed to meet two different phases of the case presented by the evidence. The first proposition, stripped of all verbiage, amounts to this; that the defendant was guilty of fraud if he purchased the goods knowing his inability to pay for them, unless he disclosed the fact of his inability to the vendor at the time. There is nothing stated

in this part of the charge about the purchaser's intention to pay. It may have been as good as the intention supposed in the later part of the charge, where the jury were told that the defendant was not guilty of fraud if he made the purchase with the expectation and intention to pay for the same, although he knew at the time that he was insolvent. It might be asked, if he knew that he was insolvent, how much better was his ability to pay and consequently his expectation of payment, than the purchaser might have had in the case supposed in the first part of the charge; but still a disclosure of his condition is deemed essential in the first part of the charge, and is made to take the place of an intention to pay in the subsequent part of the charge.

Furthermore, it is not true that a man is necessarily guilty of fraud who purchases goods knowing his pecuniary inability to pay for them and does not disclose the fact to the seller at the time. The expression in the charge, "will not be able to pay," was used in the sense of pecuniary inability to pay. This is clearly shown by the context in relation to the creditors taking all his property; and also by what is said in the closing part of the charge, where the court instructed the jury, that a man in purchasing goods holds himself out by the act of purchase as able to pay for them, and is guilty of a false representation implied by his act unless he is able to do so.

To constitute fraud in such a case, there must be such facts and circumstances attending the transaction, not only in relation to the purchaser's want of property and credit, present and prospective, if such is the case, but facts sufficient to prove to the satisfaction of the jury that the purchase was made with the intention of not paying for the goods; and where this is the case a party will be guilty of fraud whether he discloses his pecuniary condition or not. Want of property can only be evidence tending to show the state of mind in which the purchase was made. How many purchases are made by honest men, where the purchaser relies, for his ability to pay, upon his credit alone, and is not disappointed?

A new trial is advised.

In this opinion the other judges concurred, except PHELPS, J., who did not sit.