JAMES M. WATSON *vs.* JOSEPH P. SILSBY, JR.

SAME *vs.* SAME.

Suffolk. November 15, 1895. — May 19, 1896.

Present : FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Sale — Vendor and Vendee — Fraud — Purchase with Intention not to pay.*

One who buys goods with a preconceived intention not to pay for them is guilty of a fraud upon the vendor, which makes the contract voidable at the vendor's election ; but mere insolvency of the vendee, with a probability that he will not be able to pay for the property, although known to him and not disclosed to the vendor, will not defeat the contract, if the purchase is made with a hope to be able to pay and with an intention to pay if possible.

If one buys goods in his business under circumstances which indicate that he can have no reasonable expectation of ever paying for them, when he holds himself out by his manner of doing business as a person of ample property, this is evidence from which a jury may infer that he buys with an intention not to pay for them.

TWO ACTIONS OF REPLEVIN, to recover a quantity of goat-skins, sold by the plaintiff to the firm of Phelps and Lombard, and attached by the defendant, a deputy sheriff, on a writ against that firm.   The cases were tried together in the Superior Court, before *Hammond*, J., who directed the jury to return a verdict for the defendant in each case; and the plaintiff alleged exceptions.   The material facts appear in the opinion.

*A. Hemenway & D. F. Kimball*, for the plaintiff.

*R. M. Morse*, ( *C. E. Hellier* with him,) for the defendant.

KNOWLTON, J.   The property which the plaintiff seeks to recover in these actions was sold by him to Phelps and Lombard, whose title the defendant represents.   The question presented at the trial was whether Phelps and Lombard bought the goods with an intention not to pay for them.   The court ruled that there was no evidence in favor of the plaintiff to be submitted to the jury on this question, and directed a verdict for the defendant.   The exception to this ruling presents the only question before us.

It is a general rule of law both in England and in this country, and it is well settled in this Commonwealth, that one who buys goods with a preconceived intention not to pay for them is guilty of a fraud upon the vendor, which makes the contract voidable at the vendor's election.   *Rowley* v. *Bigelow*, 12 Pick. 307, 311.   *Dow* v. *Sanborn*, 3 Allen, 181.   *Kline* v. *Baker*, 99 Mass. 253.   Benjamin, Sales, (6th Am. ed.) §§ 388–443.   *Donaldson* v. *Farwell*, 93 U. S. 633.   *Stewart* v. *Emerson*, 52 N. H. 301, and cases cited.   *Dalton* v. *Thurston*, 15 R. I. 418.   *Whitten* v. *Fitzwater*, 129 N. Y. 626.   *Powell* v. *Bradlee*, 9 Gill & J. 220.   *Talcott* v. *Henderson*, 31 Ohio St. 162, 165.   In *Dow* v. *Sanborn*, *ubi supra*, Mr. Justice Hoar says: " In such a case, the fraudulent party pretends to be a purchaser when he is not, but is in fact attempting to obtain possession of the property of another dishonestly, with a view to deprive him of it without consideration. As far as the buyer is concerned, the whole sale is a mere fiction,

a delusion imposed upon the seller, to induce him to part with the possession. If it be said that a mere intention does not constitute a fraud, the answer is that the purchase with such a fraudulent intention is a fraudulent act. In its moral quality, it is hard to distinguish it from a larceny." On the other hand, it is generally held that mere insolvency of the buyer, with a probability that he will not be able to pay for the property, although known to him and not disclosed to the seller, will not defeat the contract, if the purchase is made with a hope to be able to pay and with an intention to pay if possible. *Commonwealth* v. *Eastman*, 1 Cush. 189. *Morrill* v. *Blackman*, 42 Conn. 324. *Dalton* v. *Thurston*, 15 R. I. 418. *Talcott* v. *Henderson*, 31 Ohio St. 162. *Garbutt* v. *Bank of Prairie du Chien*, 22 Wis. 384. *Kelsey* v. *Harrison*, 29 Kans. 142. The ability of purchasers to pay for goods bought on credit is often a matter of great uncertainty, and in the absence of any other fraudulent conduct it would be too strict a rule to hold one guilty of fraud for buying without the present means to pay, if he has a hope and a purpose to pay if possible in the future. But one is presumed to intend the ordinary and natural consequences of his act, and a purchase of property without any reasonable expectation of paying for it may be evidence of an intention to obtain it without paying for it at any time. A purchase with such a preconceived intention is a fraudulent act.

The precise question before us is whether the bill of exceptions shows any evidence of a fraudulent purchase. An important part of the testimony introduced by the plaintiff came from Phelps, of the firm of Phelps and Lombard, who bought the goods; and it may be assumed that, if the jury believed all of his testimony, they would be obliged to find that when his firm obtained the goods they had no intention to avoid paying for them, but expected to pay if they were able to go on with their business and expected to go on with the business long enough at least to enable them to pay the plaintiff's notes as they became due. But the jury might believe a part of the testimony of the witness and disbelieve other parts of it. The evidence tended to show that Phelps and Lombard had been deeply insolvent for a long time. Nearly a year before the last purchase from the plaintiff they had told their creditors, Richardson and

Dennie, that they must fail, and that they owed about $125,000, and had assets amounting to only about $30,000 or $40,000. They then owed Richardson and Dennie about $40,000. Under some arrangement with Richardson and Dennie they continued business without disclosing their condition to their other creditors. Richardson and Dennie helped them to carry on the business by buying goods for them and helping them to credit. Before their failure Richardson and Dennie held their accommodation paper to the amount of between $80,000 and $90,000, a very large increase over the amount held when the arrangement was made. They gave bills of sale to Richardson and Dennie of the property in their factory, including the machinery and the goods which they bought from time to time, so that when they failed nearly all of their assets were claimed by the assignee of Richardson and Dennie. Richardson and Dennie were insolvent, and their failure occurred just before that of Phelps and Lombard. The goods for which these suits are brought were bought at short intervals at four different times, on four months' credit, and they amount to nearly $7,200 in value. All these matters might have been believed by the jury to be established, while they might have disbelieved many of the other statements made by Phelps in his testimony. If one buys goods in his business under circumstances which indicate that he can have no reasonable expectation of ever paying for them, when he holds himself out by his manner of doing business as a man of ample property, this is evidence from which a jury may infer that he buys with an intention not to pay for them. *Rowley* v. *Bigelow*, 12 Pick. 307, 311. *Commonwealth* v. *Eastman*, 1 Cush. 189, 221. *Biggs* v. *Barry*, 2 Curt. C. C. 259. *Dalton* v. *Thurston*, 15 R. I. 418. *Devoe* v. *Brandt*, 53 N. Y. 462. *Whitten* v. *Fitzwater*, 129 N. Y. 626. *Talcott* v. *Henderson*, 31 Ohio St. 162, 165. *Davis* v. *Stewart*, 8 Fed. Rep. 803. *Jaffrey* v. *Brown*, 29 Fed. Rep. 476. *Edson* v. *Hudson*, 83 Mich. 450. *Slagle* v. *Goodnow*, 45 Minn. 531.

The difference between a purchase of property with an intention not to pay for it, and a purchase with knowlege that one has not the means of paying for it, nor any reasonable expectation of ever being able to pay, and with no definite intention in regard to paying, is slight, and in reference to the probability of payment is practically of but little importance. An intention is

ordinarily to be inferred from conduct and circumstances. But to constitute a fraud which will avoid the contract, there must be a definite conscious intent not to pay.

If it were held that there are no facts testified to in the present case which furnish any evidence of a fraudulent purpose, there would be very few cases in which such a purpose could ever be shown. We are of opinion that the case should have been submitted to the jury.                    *Exceptions sustained.*