Merrimack, }
Dec., 1898. }

SYRACUSE KNITTING CO. v. BLANCHARD, *Assignee.*

The false statement of a purchaser as to his financial ability and prospects does not constitute a fraudulent representation when it is a mere expression of opinion or expectation.

A purchase of goods on credit, by one who has no reasonable expectation of paying therefor and conceals the fact of his insolvency from his vendor, is not fraudulent as matter of law unless made with a concealed intention not to pay.

The title to property purchased on credit is not affected by subsequent fraudulent representations of the vendee as to his financial ability.

REPLEVIN, for a lot of underwear. Facts found by the court. One Crapo, a retail dry-goods dealer in Concord, who had previously purchased goods of the plaintiffs for which he had not paid promptly, wrote them, August 16, 1894, as follows: " Was your experience with me last fall sufficient, or do you care to sell me again this season? I can safely promise you that our dealings, if you wish to continue them, will be more satisfactory than last season. I shall have in November $4,000 extra capital, and I trust my experience will count for something in preventing me from ever getting in the same way again." The plaintiffs, rely-

ing upon these statements, sold Crapo goods on a credit of thirty days from November 1,— delivery being made between September 24 and October 24. At the time of ordering and receiving the goods, Crapo was insolvent, knew he was insolvent, and had no reasonable expectation of paying for them. He concealed these facts from the plaintiffs, who could not have learned of them by the exercise of ordinary prudence. He did not have the specific intention of not paying for the goods, but in view of his situation it was unreasonable for him to expect he could continue business and pay for them. The statement in the letter that he could safely promise, etc., was unreasonable and untrue. Whether the statement that he should have $4,000 in November was true or false did not appear, but the extent and character of his indebtedness was such that he knew such amount of additional capital would not render him solvent.

About December 20, the goods not having been paid for, Crapo offered to return those that were then unsold; but the plaintiffs, relying upon his false representation that his stock was worth $10,000 and his indebtedness was less than $1,000, declined to receive them. Upon the petition of a creditor, Crapo was decreed insolvent, January 24, 1895, and the defendant is the assignee of his estate. In this action, begun February 18, such of the goods above mentioned as were then unsold were replevied.

If upon the foregoing facts the plaintiffs can maintain the action, they should have judgment for one dollar, damages. Otherwise, the defendant should have judgment for the value of the goods.

*Leach & Stevens*, for the plaintiffs.

*Streeter, Walker & Hollis*, for the defendant.

CHASE, J. This action is based on the theory that the title to the goods in question never passed from the plaintiffs to Crapo because of his fraud in effecting the alleged contract of sale. To establish the fraud, the plaintiffs rely upon Crapo's false representation in the letter of August 16 and his suppression of facts concerning his financial condition. The question here is not whether fraud may be properly inferred from these circumstances, as a matter of fact, but whether there is anything in them which constitutes fraud as a matter of law.

1. The only false representation contained in the letter was this: "I can safely promise you that our dealings, if you wish to continue them, will be more satisfactory than last season." He had not paid the plaintiffs promptly for the goods purchased of them the preceding season, and the representation related to

that matter. It would generally be understood as a promise to be more prompt in his future payments. The word "safely" was apparently used to express inferentially his opinion that his financial ability and prospects justified him in making the promise. His further statement that he was to have additional capital, and that he expected to profit by his past experience, seems to strengthen this view. The finding that the statement was unreasonable and untrue tends to show that it was regarded at the trial term as the expression of an opinion or expectation. If so regarded, it might be unreasonable and, as it was not fulfilled, in a sense untrue. If this view of the character of the statement is correct, it did not constitute fraud although it was not true. *Lyon* v. *Briggs*, 14 R. I. 222; *Jude* v. *Woodburn*, 27 Vt. 415. "A representation which merely amounts to a statement of opinion, judgment, probability, or expectation, or is vague and indefinite in its terms, or is merely a loose, conjectural, or exaggerated statement, goes for nothing." *Messer* v. *Smyth*, 59 N. H. 41, 43; Cool. Torts 483. Unless the plaintiffs were willing to accept the statement for what it was worth as a promise, ordinary prudence would seem to require them not to rely upon it, but to call for the facts upon which the opinion or expectation was founded. If the language used can properly be construed as a statement of Crapo's financial condition, and the statement is not too indefinite or general to justify reliance upon it, there would be a preliminary question of fact to be determined before it could be regarded as constituting an element of fraud; namely, whether it was a statement of opinion or a statement of fact. If there is such a question in the case, the parties must go to the trial term for its determination. *Morrill* v. *Wallace*, 9 N. H. 111; *Messer* v. *Smyth, supra*; *Stewart* v. *Stearns*, 63 N. H. 99, 105; *Morse* v. *Shaw*, 124 Mass. 59.

2. Obtaining goods, under color of a purchase, by a dishonest concealment of an intent not to pay for them, is a fraud in law. *Stewart* v. *Emerson*, 52 N. H. 301; *Hovey* v. *Grant*, 52 N. H. 569, 580. Courts generally have recognized and followed this rule. *Bristol* v. *Wilsmore*, 1 B. & C. 514; *Ferguson* v. *Carrington*, 9 B. & C. 59; *In re Shackleton*, L. R. 10 Ch. App. 446; *Mulliken* v. *Millar*, 12 R. I. 296; *Dalton* v. *Thurston*, 15 R. I. 418; *Swift* v. *Rounds*, 19 R. I. 527; *Watson* v. *Silsby*, 166 Mass. 57; *Morris* v. *Talcott*, 96 N. Y. 100, 107, 108; *Hotchkin* v. *Bank*, 127 N. Y. 329, 344; *Slagle* v. *Goodnow*, 45 Minn. 531; *Burrill* v. *Stevens*, 73 Me. 395; *Redington* v. *Roberts*, 25 Vt. 686; *Armstrong* v. *Lewis*, 38 Ill. App. 164; *Thompson* v. *Rose*, 16 Conn. 71; *Morrill* v. *Blackman*, 42 Conn. 324; *Manheimer* v. *Harrington*, 20 Mo. App. 297, 301; *Gavin* v. *Armistead*, 57 Ark. 574, 578.

Many of these authorities hold that the purchaser's insolvency, although known to him and unknown to the vendor, is not

equivalent to an intent not to pay, as an element of fraud; and no authority in conflict with this proposition has been cited or found. But the plaintiffs say that if, in addition to insolvency and knowledge of it, the purchaser has no reasonable expectation of paying, and conceals this and the other facts from the vendor, who cannot learn of them by an exercise of ordinary care, he is guilty of fraud.

In *Powell* v. *Bradlee,* 9 G. & J. 220, one of the cases relied on to support this allegation, three distinct propositions were submitted to the jury, in substance, as follows: (1) If they found that the purchasers of the flour in suit (of which the defendants were consignees) were insolvent when they made the purchase, were aware of the fact, had no expectation of paying for the flour, concealed these facts from the vendors (the plaintiffs), applied for the benefit of the insolvency laws soon after obtaining the flour, and failed to pay for it, and that the vendors by the exercise of ordinary prudence could not have learned of such insolvency and want of expectation, the contract of sale was fraudulent and void; (2) if they found that, from and after the delivery of the flour, the vendors relied upon the individual responsibility of the purchasers for payment, the title passed, notwithstanding the purchasers were insolvent and knew it, unless the jury also found that the purchasers knew they were not and would not be able to pay for the flour, and neither intended nor expected to do so; and (3) if they found that, at the time of the purchase and delivery of the flour, the purchasers intended to pay for it, the title passed, notwithstanding they were then " as greatly insolvent as they proved afterwards to be, and knew that fact," *i. e.,* to the extent of being able to pay only twenty per cent of their indebtedness. The court held that the first and third of these instructions were correct, and that the second was incorrect. The reason given for the latter holding was that the jury could not well find that the purchasers knew they would not be able to pay, and it was sufficient for them to find, " in that respect, that they knew themselves to be insolvent and had no reasonable expectation of paying for the goods purchased." The holdings seem to be inconsistent, the one with the other. By the third instruction, the contract of sale would not be voidable for fraud if the purchasers intended to pay for the flour when they entered into the contract, even if they were so deeply insolvent that they could pay only a small percentage of their indebtedness. The fact here held out as the controlling one is the intent to pay; the expectation of the purchaser, whether reasonable or unreasonable, does not enter into the question. It is difficult to understand why the intent was not equally important in the second instruction. In *Diggs* v. *Denny,* 86 Md. 116, 127, it is said that *Powell* v. *Bradlee* "has always

been considered as settling the law in this state in regard to sales made under the circumstances mentioned." It is also said that the purchasers referred to in the case "were not guilty of fraud unless they intended to get the coal (the property pur-chased) without paying for it." This is a brief statement of the rule as generally held. But see *Peters* v. *Hilles*, 48 Md. 506; *Edelhoff* v. *Horner-Miller Co.*, 86 Md. 613.

*Talcott* v. *Henderson*, 31 Ohio St. 162, is another authority cited by the plaintiffs. In that case the issues of fact were tried before the court, and a bill of exceptions took the issues to the higher court for review. In the course of the opinion it is said: "An intention on the part of the purchaser of goods not to pay for them, existing at the time of purchase and concealed from the vendor, is unquestionably such a fraud as will vitiate the contract. But it is as certainly true, on the other hand, that where no such fraudulent intent exists, the mere fact that the purchaser has knowledge that his debts exceed his assets, though the fact be unknown and undisclosed to the vendor, will not vitiate the purchase. Whether, therefore, a contract of pur-chase, where the purchaser fails to disclose his known insol-vency, is fraudulent or not, depends on the intention of the pur-chaser; and whether that intention was to pay or not to pay, is a question of fact, and not a question of law." Considering it as a question of fact, the court held that an intention not to pay should be presumed from the purchaser's known insolvency and inability to pay. An inference of fact seems to have been treated as a presumption of law,— a course that is in conflict with the law of this state. *State* v. *Hodge*, 50 N. H. 510, 526. See, also, *Wilmot* v. *Lyon*, 49 Ohio St. 296.

*Seligman* v. *Kalkman*, 8 Cal. 207, also cited by the plaintiffs, is overruled in *Bell* v. *Ellis*, 33 Cal. 620, 626. In the latter case it is doubted whether concealment of an intent not to pay is fraud.

According to *Stewart* v. *Emerson*, *supra*, and the other cases cited, the intent not to pay for the goods obtained is the funda-mental fact in the fraud. This intent and the concealment of it together constitute the fraud. Judge *Doe*, designating the buyer as A and the seller as B, says (*p.* 320): "The fraudulent design of which B complains is the intent of A to get goods without payment and by fraudulent concealment. . . . The fraudulent design is not merely negative,— not to pay at a future time; it is also affirmative,— to obtain the goods and the credit by the concealment of the material fact of the intention not to pay."

In *Watson* v. *Silsby*, 166 Mass. 57, 60, it is said: "The differ-ence between a purchase of property with an intention not to pay for it, and a purchase with knowledge that one has not the means of paying for it, nor any reasonable expectation of ever

being able to pay, and with no definite intention in regard to paying, is slight, and in reference to the probability of payment is practically of but little importance. An intention is ordinarily to be inferred from conduct and circumstances. But to constitute a fraud which will avoid the contract, there must be a definite, conscious intent not to pay.".

In the case under consideration, although it was unreasonable for Crapo to expect he could continue business and pay for the goods received from the plaintiffs, there is evidence having some tendency to show that he intended to pay for them, and it is found that he did not have a specific intention not to do so. He continued his business more than two months and a half after receiving the goods, and nearly a month and a half after the payment became due. In the end, he did not go out of business voluntarily, but was forced out by insolvency proceedings begun by his creditors. It does not appear that he concealed or in any way incumbered his stock in trade, nor that he misappropriated any of the money arising from the business. It may be that he intended to pay the plaintiffs from the receipts of the business, but was induced by the activity and persistence of other creditors to use the receipts in paying them. It is a matter of common knowledge that the plans of insolvent purchasers are sometimes overruled in this way. That there is evidence having the opposite tendency and perhaps more weighty, furnishes no answer to this suggestion, but simply shows that the question is one of fact and not of law.

It is difficult to define fraud except in a very general way. It is variable, depending upon the circumstances of the case. Those who make use of it adopt ways that have the appearance of good faith. Great skill is often shown in the attempt to make that which is false and corrupt appear true and honest. Hard and fast rules of law would be a hindrance to the discovery of fraud. Whether a transaction is fraudulent is generally a question of fact. Of course, the circumstances attending the transaction must be weighed in the light of legal principles; but if, upon such consideration, it is found that a person has fraudulently misled another to his injury and without his fault, fraud is found. The rule making the intent the principal element of fraud in cases like the one under consideration, goes as far in the way of definition as justice requires. To introduce into it the element of the reasonableness of the purchaser's expectation as to payment would narrow it and tend to defeat the ends of justice. It would attach to the contract of sale a contingency that the law has not heretofore recognized. Many purchasers of goods are insolvent in a legal sense, but it has not been generally understood that their title to the goods depended upon the reasonableness of their expectation of paying for them. If such

were the rule, attachment and insolvency laws would be largely superseded by the efforts of vendors to reclaim the goods sold, when the purchaser failed to pay or became insolvent. Vendors do not need such a rule for their protection. They are fully protected by the rule as it now stands,— making the fraud depend upon the intent and leaving the reasonableness of the purchaser's expectation in respect to payment to be considered by the jury in connection with all other circumstances bearing upon the good faith of the sale.

3. The fraud by which Crapo, about December 20, induced the plaintiffs not to reclaim a portion of their goods did not affect the contract of sale. If the title to the goods passed to Crapo when they were delivered to him, it could not be defeated by his subsequent fraud. The defendant, as assignee of Crapo, is not estopped by Crapo's fraud to deny that the title to the goods was then transferred to the plaintiffs. As they declined to receive them, there is no basis for such an estoppel.

*Case discharged.*

Parsons, J., did not sit : the others concurred.