JOHN C. F. PHINNEY & another *vs.* LEE M. FRIEDMAN & another, assignees.

Essex. March 14, 1916. — June 22, 1916.

Present: RUGG, C. J., LORING, BRALEY, DECOURCY, & CROSBY, JJ.

*Sale,* Avoidance by vendor by reason of fraud. *Fraud. Replevin. Practice, Civil,* New trial.

An action of replevin cannot be maintained by a seller of goods against the assignee for the benefit of creditors of the buyer, a corporation, to compel the return of the goods on the ground that the buyer purchased them with the actual but undisclosed intention not to pay for them, where it appears that up to the day after the sale the treasurer of the buyer had had a controlling interest in the company, that, being of ample means, he had indorsed its paper and that by reason of that fact it had met promptly all its maturing merchandise debts, although, without the financial backing given by the treasurer, its business could not have been conducted successfully and the seller did not know and was not informed of that fact.

Mere silence or failure by a buyer of goods to inform their seller of facts relating to the buyer's financial responsibility, which for his own protection the seller ought to know, does not constitute fraud which will enable the seller to avoid the sale and maintain an action of replevin to compel a return of the goods.

Evidence, tending to show that, at the time when a corporation purchased certain goods, it was insolvent, that its treasurer, who owned a controlling interest in its capital stock, who was of ample means, and who by indorsing its commercial paper had enabled the corporation to continue in business which it could not have done without his backing, thirty days before the sale sold his entire interest in the corporation to the president and retired from any active participation in the business, and that ten days after the sale the corporation made an assignment for the benefit of its creditors, will warrant findings that at the time of the sale the officers of the corporation had no present expectation that the former treasurer would continue to give the corporation his financial backing and therefore that they could have no reasonable expectation of ever making payment for the goods; and, on such findings, the seller of the goods may maintain an action of replevin for their return.

Where, at the trial of an action of replevin by a seller against an assignee for the benefit of creditors of the buyer for the return of the goods on the ground that at the time of the sale the buyer had an actual but undisclosed intention not to pay for the goods, the judge orders a verdict for the defendant and, on exceptions by the plaintiff, it appears that the goods were sold in two parcels at dates a month apart, and that the evidence would not warrant a finding for the plaintiff as to the first sale but would warrant such a finding as to the second, the verdict as to the first sale should stand, but a new trial may be had, confined to the question of recovery of the goods included in the second sale.

BRALEY, J. The defendants, as assignees under an assignment at common law for the benefit of creditors of the R. & G. Shoe Company, to which reference subsequently will be made as the company, received as part of its assets two cases of cut leather soles bought of the plaintiffs by the company in two shipments, one on February 28 and the other on March 31, 1913. And upon being informed of the assignment, which was dated April 9, 1913, the sellers demanded a return of the goods because, as they alleged, the sales having been induced by the fraud of the company, no title passed. The defendants having refused compliance with the demand, the plaintiffs brought this action of replevin. The trial judge * ordered a verdict for the defendants and the case is here on the plaintiffs' exceptions.

It is not asserted that the sales were induced by reason of any misrepresentations of the buyer, and the question for decision is whether there was any evidence which would have warranted the jury in finding that the company bought with the actual but undisclosed intention not to pay for the goods. The burden of proof rested on the plaintiffs, and the evidence concerning the financial condition of the company and its ability to meet its obligations in due course consists of statements made by one Gregory, its president, to the plaintiff firm but not in connection with the sales, and as a witness called by them at the trial. It appears from his testimony that before March 1, 1913, the treasurer held a controlling interest in the capital stock of the company, and, being of ample resources, indorsed its commercial paper, and the jury could find that without his financial support the business could not be successfully continued. Of this dependence of the company on the indorsements of its treasurer the plaintiffs were ignorant, as well as of its assets and outstanding liabilities which included an indebtedness direct and contingent to the treasurer of $55,000 on a capitalization of $75,000. It was under these conditions that on March 1, 1913, the treasurer sold his stock to the president, taking his promissory note in payment. And when, on April 4, 1913, the treasurer declined to indorse the company's promissory notes in the future, it seems certain from the tenor of all of the evidence, and as the president testified, "that the indorsement not being there for carrying its

* *Hall*, J.

business on, we were pushed by creditors" and the company was forced to make the assignment.

It being undisputed that before the sale of February 28, 1913, maturing merchandise debts had been met promptly, and that the company was steadily financed by the treasurer, there is no sound reason for saying, nor could the jury properly find, that debts for manufacturing supplies had been contracted with no reasonable expectation of paying therefor, and the plaintiffs cannot avoid this transaction.

The sale of March 31, 1913, occurred ten days before the assignment, and the jury could say that the company at the date of purchase if called upon to meet all of its obligations was insolvent, unless the treasurer made further advancements, and that this condition was known to the president. The fact of insolvency, however, would not warrant a finding that when the goods were ordered a fraudulent purpose was entertained not to pay for them. *Ayers* v. *Farwell*, 196 Mass. 349, 352. It is settled that mere silence or failure by the buyer to inform the seller of facts which for his own protection in the transaction he ought to know, does not of itself constitute fraud. *Brown* v. *Leach*, 107 Mass. 364, 368, and cases cited. And where a purchaser who is insolvent buys merchandise without disclosing his financial condition to the seller, who is ignorant of it but makes no inquiry and is not mislead by any misrepresentations, there is no fraud in law which will avoid the contract, "if the purchase is made with a hope to be able to pay and with an intention to pay if possible." *Watson* v. *Silsby*, 166 Mass. 57. *Dow* v. *Sanborn*, 3 Allen, 181. Or in other words there must be a fixed intention and fraudulent purpose not to pay on the part of the purchaser when the goods are obtained.

The question of fraud being one of fact, the plaintiffs were obliged to introduce some evidence from which it positively could be found. *Barron* v. *International Trust Co.* 184 Mass. 440. And upon the record they are compelled to rely on the evidence of the president, their own witness, and the company's financial condition when the goods were ordered. The jury could disregard his testimony in so far as it tended to support his statement that the purchase was made honestly and in due course of business. It could be found the president knew at the time of purchase that

the treasurer had sold his stock and retired from any active participation in the business, and the jury could say that under these circumstances there was no present expectation that he would continue to finance its affairs and that the president had cause to believe that his financial support had been permanently withdrawn. A further finding would be warranted that these conditions indicated that there could have been no reasonable expectation of ever making payment. *Watson* v. *Silsby*, 166 Mass. 57, 60.

While the exceptions must be sustained, the new trial is to be confined to this purchase only; and the verdict for the defendants on the first purchase is to stand. St. 1913, c. 716, § 1.

*So ordered.*

*H. A. Bowen*, (*A. Goldberg* with him,) for the plaintiffs.
*Lee M. Friedman*, for the defendants.