Strafford,
June 4, 1935.

GITTERMAN & COMPANY

*v.*

LYNN MODERN SHOE COMPANY.

*Cooper & Hall* (*Mr. Hall* orally), for the plaintiff.

*Conrad E. Snow* and *Leonard C. Hardwick* (*Mr. Snow* orally), for the defendant.

BRANCH, J. The defendant's exceptions raise two questions of law,—1. was there evidence to sustain the findings of fact? and 2. do the findings furnish a sufficient basis for the order for judgment?

1. With reference to the first question, the defendant argues as follows: "The court had no evidence before it as to when the contract of sale between the plaintiff and defendant was entered into, much less of the defendant's financial condition at the time such contract was made. ... There is no evidence that even if the defendants were insolvent that they had knowledge of such."

It is true that the evidence does not definitely establish the date when the defendant's order was given and accepted, but it was conceded that the goods in question, which consisted of leather, were delivered upon January 2, 1930. Under these circumstances, a conclusion that the order was given shortly before that time was justified.

In regard to the financial condition of the defendant at the turn of the year, there was abundant evidence to justify a finding of insolvency. Comparison between a financial statement furnished by the defendant to its bankers on November 13, 1929, and the inventory prepared by its assignees as of January 6, 1930, shows that within this period of less than two months, the total assets of the corporation had shrunk from $153,026.56 to $72,024.48, while its liabilities had increased from $102,024.90 to $153,494.05, which indicates a shrinkage in net assets of $132,471.23.

Upon January 4, 1930, within two days after the goods in question were delivered, the officers and stockholders of the defendant sought legal advice with reference to their financial condition. They then stated that it was "impossible to continue along manufacturing shoes any longer in Rochester" and that "imminent action must be taken to protect them from an attachment"; that creditors who had been "waiting . . . to get their money in payment of their bills" were pressing for payment; and they were afraid that if they opened their factory in Rochester on the following Monday "a keeper would be put into their place of business."

Upon this evidence the court was justified in finding that, at the time when the goods in question were ordered and delivered, the defendant was, to the knowledge of its officers and agents, hopelessly insolvent.

2. In regard to the sufficiency of the court's findings to support the order for judgment, there can be little room for doubt.

It is well settled law that a vendor who has been induced to part with the possession of goods by the fraud of the vendee, may rescind the contract of sale and recover the goods by an action of replevin. *Farley* v. *Lincoln*, 51 N. H. 577; *Noyes* v. *Patrick*, 58 N. H. 618.

It is equally well settled in this jurisdiction that one who purchases and secures delivery of goods with an intent not to pay for them, commits a fraud upon the vendor. *Stewart* v. *Emerson*, 52 N. H. 301; *Syracuse Knitting Company* v. *Blanchard*, 69 N. H. 447. The insolvency of the purchaser at the time of the sale "may be evidence on the question of his intent." *Stewart* v. *Emerson*, *supra*, 322.

The court has found that the defendant concealed its financial condition from the plaintiff "for the purpose of obtaining said goods without payment therefor." This is obviously a finding that they purchased the goods with an intent not to pay for them, which not only justifies but compels an order of judgment for the plaintiff. The fact that the court also stressed the concealment of the defendant's financial condition as an element of fraud does not lessen the effect of this decisive finding.

*Exceptions overruled.*

All concurred.