

*Municipal Court of the*
*City of Boston*
No. 315092
## WARREN BROTHERS COMPANY
### v.
## PETER F. TRAVI
Argued: Oct. 19, 1973 - Decided: Feb. 26, 1974

142

See: Concurring opinion of Justice Doerfer and Dissenting opinion of Justice DeGuglielmo.

*Present:* Lewiton, C.J., DeGuglielmo, Doerfer, JJ.

Case tried to *Canavan, J.*

**Lewiton, C.J.** In this action of tort, the plaintiff seeks to recover for labor and materials furnished by it to the defendant under a written contract, in reliance upon alleged false representations by the defendant as to his financial condition. The defendant's answer contains a general denial, and also sets up as a defense his discharge in subsequent bankruptcy proceedings.[1] The trial court found for the defendant, after finding that the latter "made truthful representations as to his financial condition at all times and answered truthfully all questions asked him relative to his financial condition".

The case is here on report of the plaintiff's claims (a) that the findings are inconsistent with certain rulings made by the court, and

---

[1] Section 17 of the United States Bankruptcy Act, as in force at the time of the transactions involved in this case, provided that "(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations. . . ." 11 USC § 35.

(b) that the court erred in denying certain of the plaintiff's requests for rulings hereinafter set forth.

**At the trial there was evidence tending to show the following:**

The defendant was the general contractor on a so-called "Mister DoNut job". He sought to have the plaintiff perform certain paving work on that job under a sub-contract. The defendant first applied to the plaintiff for credit on this job in early June, 1970, at which time he submitted to the plaintiff written and oral statements relating to his financial condition. All of these statements were true. In reliance on these statements, the plaintiff decided to grant credit to the defendant and go forward with the requested work. In consequence, the agreement was signed on some date between June 8 and July 6, 1970. The plaintiff's form of proposal and contract which was executed by the parties contains among its "terms and conditions" the following paragraph:

> "We shall not become obligated to perform the work called for under this contract until your credit has been checked and approved by our Credit Department. If credit conditions become unsatisfactory at any time prior to our completion of the work hereunder, we shall be furnished adequate security upon our request."

There was no evidence that the plaintiff became aware at any time prior to its perform-

ance of the work that the defendant's credit situation had become unsatisfactory, nor any evidence that the plaintiff made any request for security.

Pursuant to the contract, the plaintiff did "fine grading" amounting to 10 percent or less of the work, on July 10, 1970; "paving" which was by far the bulk of such work, on July 15, 1970; and the installation of a "berm" on July 22, 1970, thereby completing the required work under the contract.

On July 8, 1970, the defendant met with an Attorney Kahn for the purpose of discussing the possible bankruptcy of the defendant this meeting having been arranged either by the defendant's accountants or his regular attorney. The defendant first became aware that his financial condition was not as good as he thought it to be shortly before July 8, 1970. At some time between July 8 and July 23, 1970, the defendant decided to file a petition in bankruptcy and such a petition was in fact filed by him on or about July 23, 1970. This petition was dated July 21, 1970. At no time, before or after his meeting with Attorney Kahn on July 8, 1970, did the defendant inform the plaintiff that he was thinking of going into bankruptcy nor did he inform the plaintiff that his financial condition had deteriorated. When the petition in bankruptcy was filed, the "Mister DoNut job" was essentially complete, with the exception of a few very minor details.

The plaintiff performed all the work called for in the contract in a workmanlike manner, and submitted its invoice for the agreed price of $2,002.50, this being a fair and reasonable price for said work. The plaintiff filed no proof of claim in the defendant's bankruptcy proceedings although it was listed by the defendant as a creditor, and was fully informed of the petition and subsequent proceedings. In due course, the defendant was adjudged a bankrupt and was granted a discharge in bankruptcy.

The trial judge granted several rulings requested by the plaintiff at the close of the trial, but denied plaintiff's requests for rulings numbered 2, 3, 6, 7, 16 and 17, which are set forth below.[2] Essentially, these requests were to the effect that as matter of law, there must be a finding for the plaintiff for the rea-

---

[2] "2. The evidence requires a finding for the plaintiff. COURT: *Denied.*

"3. The evidence does not warrant a finding for the defendant. COURT: *Denied.*

"6. The defendant obtained money or property by credit from the plaintiff by use of false representations. COURT: *Denied.*

"7. False representations need not be explicit, but may be made of obvious implication. COURT: *Denied as ambiguous.*

"16. The defendant had a duty to inform the plaintiff of his impending bankruptcy. COURT: *Denied. See my findings of fact.*

"17. That during the progress of the plaintiff's work for the defendant, the defendant had a duty to inform the plaintiff of his impending bankruptcy. COURT: *Denied. See my findings of fact.*"

son that the defendant had a duty to inform the plaintiff, before the latter performed its work under the contract, of the deterioration of the defendant's financial condition and of his contemplation of filing a bankruptcy petition, and that his failure so to inform the plaintiff amounted, as matter of law, to "false representations" within the meaining of Section 17(a) of the Bankruptcy Act.[3]

Insofar as the plaintiff claims to be aggrieved by any apparent inconsistency between the trial justice's findings and the requested rulings granted by him, it is well settled that the appropriate remedy in such a case is not a report to the Appellate Division, but either a motion to correct the inconsistency or a motion for a new trial. *Viera* v. *Balsamo,* 328 Mass. 37, 39; *Biggs* v. *Densmore,* 323 Mass. 106, 108-9; *National Shawmut Bank* v. *Johnson,* 317 Mass. 485, 492. Since the plaintiff pursued neither of these permissible courses, the question of inconsistency is not open to it now. *Raytheon Mfg. Co.* v. *Indemnity Insurance Co.,* 333 Mass. 746, 749.

There was no error in the denial of the requested rulings, of which the plaintiff complains.

The ultimate decisive issue here involved is whether the debt for which the plaintiff seeks to recover is, as matter of law, one "for obtaining money or property by . . . false

---

[3] See footnote 1, *supra.*

representations" within the meaning of § 17 of the Bankruptcy Act. 11 USC, § 35. In deciding this issue, we must be mindful of the rule that in determining whether a particular debt is subject to discharge in bankruptcy, the Bankruptcy Act must be construed strictly against the objecting creditor and liberally in favor of the bankrupt. *Gleason* v. *Shaw,* 236 US 558, 562; *In re Zidoff,* 309 F2d 417, 419; *Shepherd* v. *McDonald,* 157 F2d 467, 469; *cert. den.* 329 US 802; *Sweet* v. *Ritter Finance Co.,* 263 F. Supp. 540, 543.

The creditor in a case, such as this, has the burden of proving that his claim has not been discharged (*Sweet* v. *Ritter Finance Co.,* 263 F. Supp. 540; *U. S.* v. *Syros,* 254 F. Supp. 195; *Horner* v. *Nerlinger,* 304 Mich. 225, 233) and in so doing, he must prove that the debt resulted from fraudulent and intentionally false representations by the debtor. *Davison-Paxon Co.* v. *Caldwell,* 115 F2d 189, 191, *cert. den.* 313 US 564; *Zimmern* v. *Blount,* 238 Fed. 740, 745; *U. S.* v. *Syros,* 254 F. Supp. 195, 198; *Swanson Petroleum Corp.* v. *Cumberland,* 184 Neb. 323; *Klatt* v. *Helming,* 248 Wis. 139, 143; *cf. Phinney* v. *Friedman,* 224 Mass. 531, 533.

Admittedly, there were no overt or verbal false representations by the defendant in this case. The plaintiff does not dispute the finding that the defendant's representations made to it prior to the execution of the contract were

true. It contends, however, that when the defendant later learned that his financial condition had deteriorated and he contemplated filing a petition in bankruptcy, he owed a duty to disclose these facts to the plaintiff before the latter did its work under the contract, and that the defendant's silence under these conditions amounted, as matter of law, to intentional and wilful misrepresentations. We do not agree.

While silence may in some circumstances be the equivalent of, and regarded as, a false representation, this is true only where there is a duty to speak. *Wade* v. *Ford Motor Co.*, 341 Mass. 596, 597; *Kannavos* v. *Annino*, 356 Mass. 42, 46-48; *Swinton* v. *Whitinsville Savings Bank*, 311 Mass. 677, 678; *Phinney* v. *Friedman*, 224 Mass. 531, 533; Williston, Contracts (3rd Ed.) sec. 1497.

It is a general rule that a statement as to financial condition which was true when given will not constitute a false representation because of a subsequent change in the debtor's affairs, unless the statement constitutes a continuing representation because of the debtor's duty to inform the creditor of changes in the debtor's financial condition. *Monier* v. *Guaranty Trust Co.*, 82 F2d 252, 254; Collier on Bankruptcy (14th Ed.) § 17.16; Williston, Contracts (2d Ed.) § 1519.

There is nothing in the facts of this case to require the conclusion that the statements

of the defendant prior to the execution of his contract with the plaintiff were to be regarded as continuing representations, requiring the defendant to inform the plaintiff of subsequent changes in the defendant's affairs. While the "terms and conditions in the plaintiff's printed proposal, which later became the contract between the parties, specifically gave the plaintiff the right to require security if "credit conditions" became unsatisfactory to it, they were silent as to any obligation of the defendant to furnish subsequent information pertaining to his "credit conditions". Such a requirement could easily have been inserted, if intended. *cf. Gerder* v. *Lustgarten,* 266 US 321, 323; *Monier* v. *Guaranty Trust Co.,* 82 F2d 252, 254; *Fruit Dispatch Co.* v. *Wolman,* 124 Maine 355; *In re B & R Glove Corp.,* 279 Fed. 372, 377; *See Hanley Co., Inc.* v. *Whitney,* 279 Mass. 546, 554. Any ambiguity as to the meaning or scope of this aspect of the contract is to be resolved against the plaintiff, which drafted the contract. *Wright* v. *Commonwealth,* 351 Mass. 666, 673; *Bowser* v. *Chalifour,* 334 Mass. 348, 352. Cases which hold that nondisclosure of adverse changes in the face of such express undertakings by the debtor may be regarded as false representations are, therefore, inapposite here. Compare, for example: *Gerder* v. *Lustgarten,* 266 US 321; *Fruit Dispatch Co.* v. *Wolman,* 124 Me. 355; *Ginsberg* v. *International Shoe Co.* (Tex. Civ.

App.) 299 SW 695, 699. See Collier on Bankruptcy (14th Ed.) § 17.16. Similarly inapposite are cases in which the original statements concerning the financial condition of the debtor are made to the creditor with a view to a series of transactions. and further extensions of credit are subsequently requested and accepted by the debtor, without a disclosure of an intervening change in his circumstances. *Hills Savings Bank* v. *Cress,* 205 Iowa 306, 309. See Annotation, 104 ALR 921, 925. Unlike the facts in many of the cases cited above, where the debtor took affirmative action to procure additional loans or to order more merchandise on credit after becoming aware that his financial condition had deteriorated since his original financial statement to the creditor, the defendant here took no action to procure materials or services from the plaintiff after becoming aware that his financial situation had become impaired. In fact, the report contains no reference to any evidence that the defendant had any personal contact with the "Mister DoNut job" or had any personal knowledge of the time-table of the plaintiff's performance there of its work under the contract, with reference to the time he decided to file a petition in bankruptcy.

While there was evidence that the defendant conferred with an attorney as early as July 8, 1970 concerning possible bankruptcy proceedings, there is no evidence reported as

to the date on which his decision was made to file such a petition. It is common knowledge that in many instances in which debtors consider the possibility of bankruptcy, they are ultimately able to resolve their financial problems without resort to bankruptcy. We are aware of no requirement under the Bankruptcy Act or the decided cases, in the absence of some special requirement of disclosure such as those discussed above, that a debtor considering the alternative of bankruptcy must give notice of such consideration to parties with whom he has pre-existing contracts for the furnishing of materials or goods. In the circumstances of this case, the trial judge was not required to rule as a matter of law that the failure of the defendant to disclose his consideration of possible bankruptcy prior to completion of the plaintiff's performance of the contract was intentionally fraudulent (*cf. Phinney* v. *Friedman,* 224 Mass. 531, 533), and amounted to a false representation such as to exclude the plaintiff's claim from the scope of the defendant's discharge in bankruptcy.

It is hereby ordered that the report be dismissed.

**Report dismissed.**

**Doerfer, J.** concurring: I concur in the opinion of the Chief Justice, and I would note the following additional reasons for reaching the same result.

The matter is, of course, governed by §17(a) (2) of the United States Bankruptcy Act. Before reaching the question whether the record in this case discloses fraud as a matter of law it must be established that the defendant obtained "money or property". The defendant was a contractor who entered a subcontract with the plaintiff who, in turn, agreed "to furnish all labor, materials and equipment required for the performance of the following described work in connection with construction or improvements at Mr. DoNut, Rte. 139 & Willow St., Marshfield, Mass., which property is owned by . . . [Mr. DoNut]". Thereafter follows a "Description of Work and Price" which is to "fine grade, roll and install a two course bituminous concrete pavement. . ." and curb.

The Supreme Court of the United States has held in construing this section of the Bankruptcy Act that services are not property, and thus, one who obtains services by false pretenses or false representations is nevertheless discharged on account of such liability by a discharge in bankruptcy. *Gleason* v. *Shaw,* 236 US 558 (1915). The court said, at p. 561-2, "denotes something subject to ownership, transfer or exclusive possession and enjoyment which may be brought into the dominion of a court through some recognized process." The court in a later case cautioned against a narrow interpretation of the term "property"

and included within the concept the obligation of a surety company on a contractor's bond, *Fidelity & Deposit Company of Maryland* v. *Arenz,* 290 US 66 (1933). Nevertheless in a case nearly identical to the case at bar, it has been held that a general contractor did not obtain "money or property" from a paving subcontractor where the paving subcontractor performed a contract for the general contractor on land owned by another. *Hoyle* v. *Bagby,* 253 NC 778, 117 SE 2d, 670 (1961). See also *Rudstrom* v. *Sheridan,* 142 NW 313, 314 (Minn. 1973).

Hence I would hold that, since no money or property was obtained by the defendant in this case from the plaintiff, his discharge in bankruptcy is a bar to the plaintiff's claim.

**DeGuglielmo, J.** dissenting: In my judgment, the final decision of this matter rests squarely upon whether there was a duty on the defendant to notify the plaintiff of his changed financial circumstances. In the determination of this issue, I must differ with my colleagues.

In its decision, the majority glosses over what, to me, is an important factual ingredient. There must be added to the facts enumerated in the majority decision that the plaintiff and defendant had, in the past, done business on a "cash in advance" basis, or with an arrangement whereby a third party would either guarantee payment or would pay the plaintiff directly. (Report, p. 4)

Although the trial justice's finding of fact that defendant made a truthful representation as to his financial condition must stand, [*Chadwick* v. *Desroches,* 333 Mass. 756; *Mills* v. *Bell,* 33 Mass. App. Dec. 167; *Russo* v. *M.T.A.,* 21 Mass. App. Dec. 103,] it must ever be kept in mind that this credit representation was made only once and then before any credit change and before any work was performed by the plaintiff. This court, therefore, may draw reasonable inferences from the events which occurred subsequent to the defendant's representation and determine their effect or the relationship between the parties.

It is obvious that the defendant knew he was in such financial trouble that it affected his credit as early as July 8, 1970. At this time, the plaintiff had not yet performed any portion of its obligation under the contract. It is also significant to me that the filing of the bankruptcy petition was delayed until the defendant had obtained the full benefit of his contract with the plaintiff. Factually, I would interpret this course of action by the defendant as a calculated fraud perpetrated by the defendant upon the plaintiff.

Despite this interpretation by me, however, I am bound by the trial justice's finding of fact. See *Chadwick* v. *Desroches,* 333 Mass. 756; *Mills* v. *Bell,* Mass. App. Dec. 167; *Russo* v. *M.T.A.,* 21 Mass. App. Dec. 103. The plaintiff has no remedy unless the defendant had an

obligation to notify the plaintiff of his changed credit status. This issue was raised by the plaintiff in its requests for rulings #16 and #17 as follows:

16. Defendant had a duty to inform the plaintiff of his impending bankruptcy.
17. That during the progress of the plaintiff's work for the defendant the defendant had a duty to inform the plaintiff of his impending bankruptcy.

Both requests were denied by the trial justice with the notation:

"Denied. See my finding of fact."

In denying these requests the trial justice appears to follow the philosophy that "mere silence is not equivalent to fraudulent representation." To this general philosophy I agree. My disagreement arises from the conclusion that there is more than *mere* silence in the case at bar.

First, we must analyze the contract clause between the parties and seek to interpret the effect of that clause, reading, "If credit conditions become unsatisfactory at any time prior to our completion of the work hereunder, we request."

Secondly, we must determine whether this is truly a case of "mere silence".

Thirdly, is there any obligation incumbent upon the defendant to notify plaintiff of changed credit?

An examination of the contract would compel the inescapable factual conclusion that it was drafted by the plaintiff. The contract, therefore, must be interpreted against the party who draws it, if ambiguous or uncertain language is used. *Bowser* v. *Chalifour,* 334 Mass. 348; *Massachusetts Turnpike Authority* v. *Perini,* 349 Mass. 448.

It has been argued that if the parties intended in their contract a specific obligation of disclosure, the plaintiff should have put that requirement in its contract. Although this was not done, it does not mean that the entire interpretation of the contract must be scrapped. A contract must be construed to give it effect as a rational business instrument and in a manner which will carry out intention of the parties. *McMahon* v. *Monarch Life,* 345 Mass. 261.

The words of a contract must be given effective interpretation, if at all possible, in the context of the relationship of the parties. *Berkal* v. *M. DeMatteo Constr. Co.,* 327 Mass. 329; *New England Foundation* v. *Commonwealth,* 327 Mass. 587; *Stop & Shop* v. *Ganem,* 347 Mass. 697.

Unless the contractual provision for additional security in event of changed credit conditions is interpreted so as to regard the original statements by the defendant as continuing representations, it would appear to be useless verbiage. See *Yorke* v. *Taylor,* 332 Mass. 368, 374, ''A false though innocent representa-

tion of a fact made of one's own knowledge may be the basis of liability.''

The only reasonable manner in which the plaintiff in these circumstances could be made aware of the changed credit condition was by disclosure by the defendant. It is a matter of common knowledge that except in extraordinary circumstances the fluctuations of the financial condition of a party are known only by the party himself. The obligation to disclose does not come from any requirement of the Bankruptcy Act but from a philosophical legal determination by the Courts of this Commonwealth.

In all the cases cited by the majority, the determination by the majority rests squarely on the proposition that the mere silence alone, and nothing more, relieves the defendant of liability. Those cases are distinguishable from the case at bar. *Swinton* v. *Whitinsville Savings Bank,* 311 Mass. 677, 678. In the *Swinton* case, the defendant made no representation at any time and the Supreme Judicial Court said, on page 678,

> ''There is no allegation of any false statement or representation or uttering of a half truth which may be tantamount to a falsehood. There was no intimation that the defendant by any means prevented the plaintiff from acquiring information as to the house. There is nothing to show any fiduciary relationship between the parties — or that the plaintiff stood

in a position of confidence towards or de-pendence upon the defendant . . . . it is concealment in the simple sense of *mere* failure to reveal with nothing to show any peculiar duty to speak.''

In *Kannavos* v. *Annino,* 356 Mass. 42, we find a case more closely similar to the case at bar. Here, the defendant intentionally withheld information of building code violation. The court said, inter alia, page 48,

Although there may be no duty imposed upon one party to a transaction to speak for the information of the other . . . . if he does speak with reference to a given point of infomation, voluntarily or at the other's request, he is bound to speak honestly and to divulge all material facts bearing upon the points that lie within his knowledge. Fragmentary information may be as misleading . . . . as active misrepre-tionable as whole lies.''

The objection to the application of the *Kanna-vos* case to the case at bar may be that representation and/or half-truths were made during the negotiation of the relationship. Its answer lies in the decision of whether the representation and its effect ceased upon its being made or whether the representation continues during the entire life of the contract. See to same effect, *Maxwell* v. *Ratcliffe,* 356 Mass. 560. *Wade* v. *Ford Motor Co.,* 341 Mass. 596 is not con-

trolling because an examination of Wade shows no act of representation by the defendant.

In the light of the foregoing we must determine whether this is truly a case of "mere silence".

Factually, the defendant made representations upon which the plaintiff, for the first time in its relationship with the defendant, agreed to give credit to the defendant. Prior to the defendant's representations, the defendant was on "cash and carry" or third party guaranty basis. In making his representations the defendant intended that the plaintiff continue to act upon it.

By his consultation with a bankruptcy attorney, it becomes evident that changed credit conditions occurred. This conclusion is buttressed by the fact that the defendant waited until he had obtained all the benefits of his contract with the plaintiff before filing his bankruptcy petition.

The question is squarely raised, "Under these circumstances, was there a duty on the part of the defendant to disclose his changed credit?"

Restatement of Torts, § 472, says

"(1) There is no privilege of non-disclosure by a party who

(a) has previously made a misrepresentation, either innocently or without any intention or expectation that it would induce conduct and subsequently before

a transaction has been induced thereby is aware of the facts and intends or expects that conduct will be induced by the mistake, or

(b) knows that the other party is acting under a mistake as to undisclosed material facts, and the mistake if mutual would render voidable a transaction caused by relying thereon . . .

''(2) Where non-disclosure is not privileged it has the effect of material misrepresentation.''

To the same effect, Williston on Contracts, Vol. 5, § 1497, says

''And one who, after making an innocent misrepresentation, discovers the truth yet thereafter silently allows another to act on the misrepresentation is guilty of fraud. The consequence is the same though the original representation was true when made. And there is a duty on the maker to disclose the falsity of misrepresentation which when made was not made for the purpose of its being acted upon if he subsequently ascertains that the other party is about to act in reliance upon it in a transaction with him. In effect he is continuing the representation with knowledge of its falsity.''

Having reached a conclusion that by his actions the defendant has perpetrated a fraud, his discharge in bankruptcy is no defense in

the case at bar. [See cases cited by majority in this decision, as to effect of fraud in matter of discharge under U.S. Bankruptcy Act].

I conclude, therefore, that the trial justice was in error in denying plaintiff's requests for rulings number 16 and 17.

I find no other error in the rulings of the trial justice.

I would enter a finding for the plaintiff in the amount of Two Thousand Two and 50/100ths ($2,002.50) dollars together with interest from July 21, 1970.

PETER P. DAVIS of Boston
  for the Plaintiff